*Spring Term 1839.*

*Rice*
vs
*Hogan &c.*

*May 6.*

---

# Rice *vs.* Hogan & Thompson.

[Mr. Pirtle for appellant: Mr. Owsley and Messrs. Loughborough and Haggin for appellees.]

FROM THE CIRCUIT COURT FOR JEFFERSON COUNTY.

Chief Justice ROBERTSON delivered the Opinion of the Court.

THIS is a petition and summons, brought by *Hogan and Thompson* against *Rice*, on the following writing, as a bill of exchange:

"Philadelphia, April 15th, 1837."
"Eight months after date, pay to the order of Hogan "and Thompson, five hundred and twenty dollars, value "received, and charge the same to account."
"*For Mr. James Rice, jr.*"⎱     "*Hogan & Thompson.*"
"*Louisville, Kentucky.*"⎰

The petition avers that, in due time, the bill was presented to the *drawee* for acceptance, and that he, there-

PET. & SUM.

*April* 16.

The petition and summons.

Spring Term
1839.

*Rice*
vs
*Hogan &c.*

upon, did accept the same, by endorsing thereon "*accepted;*" that, afterwards and before the day of payment, the *drawers* made an endorsement on the bill, directing the payment thereof to *P. S. Loughborough,* of which the acceptor had due notice; that said *Loughborough* was only the agent of the *drawers,* merely for collection, and without any beneficial interest: and that the *acceptor* had nevertheless failed to pay the amount of the bill to the said *Loughborough,* either on the day of payment or at any time since, and that the said debt *still remains unpaid.*

*Points made in the case.*

The Circuit Judge, to whom both the law and the facts were submitted, rendered a judgment against *Rice,* for five hundred and twenty dollars with interest; and, in the revision of that judgment, the following points are presented for consideration:—

1. Is the writing sued on, a bill of exchange?

2. If it be such a bill, is it foreign or domestic?

3. If it be a foreign bill of exchange, does the statute of 1837, (*Session Acts,* 41,) authorizing the "*holder* of any *protested bill of exchange*" to sue, *by a petition and summons,* the *drawer, endorser,* or *acceptor,* either jointly or severally, authorize such a suit by the *drawers,* in this case, against the *acceptor?*

4. If the statute constructively authorizes the suit, is the judgment sustained by the facts exhibited in the record?

*A general request in writing, to pay money to the drawer's own order, is a bill of exchange, which the drawer may make payable to himself by indorsement, & notice to the acceptor, before it is due.*

*First.* We have no doubt that the writing is a bill of exchange. There may be but two parties to a bill. A written request to pay money to the order of the drawer, and upon his general credit, is a bill of exchange; and, upon a general acceptance, the acceptor may be required to pay to the drawers themselves, if, by endorsement and notice in due time before the day of payment, they make the bill payable to themselves.

*A bill drawn in one State, & payable in another, is a foreign bill.*

*Second.* Nor have we any doubt that, as the bill was drawn in *Philadelphia* on the *drawee* in *Louisville,* which places are in two different States of this confederacy, it should be deemed, nothing appearing to the contrary, to be a foreign bill.

Spring  Term
1839.

Rice
vs
Hogan &c.

*Third.* It does not appear that the bill was protested; nor was a protest necessary as between the *drawers* and the *acceptor.* The *first section* of the act of 1837 applies *literally* to only *protested bills;* and another section (the 6th) applies to *domestic bills,* upon which a protest is not material as between any of the parties to them.   If the first section does not embrace this case, the suit, as brought, is not authorized by the act of 1837.

The phraseology of the entire enactment, and especially that of the first section, is peculiarly ambiguous; and the form prescribed in the first section is not appropriate to more than one of several classes of cases evidently embraced by that section.   Such a remedial statute should be liberally construed.   A suit by a *drawer* against an *acceptor* is obviously comprehended by the *object* of the enactment.   The *form* of the petition, as prescribed by the first section, applies literally to bills of exchange, whether protested or not; and there could have been no motive for restricting the new remedy upon *foreign* bills to such as shall have been protested—a protest being immaterial to the form of remedy; and the sixth section showing, as it does indisputably, that it was the right of action, and not the mode of acquiring or proving it, that was alone considered by the Legislature.

The act of 1837, authorizing suits by petition and summons, upon bills of exchange, is a remedial statute, which should be construed liberally—and as authorizing the suit by *a drawer,* being 'the holder,' against *an acceptor;* the term 'protested' used in the first sec. as descriptive of the bills upon which petitions may be maintained, is synonimous with *dishonored ;* and under that sec. a petition & summons may be maintained in any case where *as sumpsit* will lie on the same bill, between the same parties.

Considering the character and policy of the enactment of 1837, we feel authorized to conclude that *"protested"* in the first section should be deemed synonymous with *dishonored;* and that the Legislature intended to allow the more summary and simple remedy by *petition,* on any bill of exchange whenever an action of assumpsit could be maintained *on the same bill,* and between the same parties.

" The holder" of a bill is he who is in possession of the bill, and is legally entitled to the benefit of it; and therefore the *drawer,* as well as any other party, may become " *the holder.*"

The first section of the act of 1837 was, in our opinion, intended to apply to every " *holder*" of a bill of exchange wherever, *as such,* he shall have a right to sue *thereon.*

Spring Term 1839.

*Rice*
vs
*Hogan &c.*

In a suit against an acceptor, upon a general acceptance, it is not necessary to aver a formal demand, or presentation for payment. And—

Where a suit is brought by petition, under the act of '37, by the drawer of a bill, *as the holder*, against the acceptor, the indorsements on the bill may be disregarded.

Where a bill is payable to the drawer's order, and indorsed to *his agent*, the indorsement is virtually to himself, and no averment of his having paid it, is necessary.

An averment that the pltf. (drawer) is *the holder* of the bill, is *prima facie* evidence of his right to sue.

*Fourth.* The petition neither averred a presentation of the bill for payment, nor transcribed the endorsement to Loughborough; nor was there, on the issue, upon the plea of *nihil debit,* any proof of either a re-indorsement by Loughborough to the *drawers,* or of an erasure of the endorsement by them to him. But these omissions are not, in our judgment, material.

It seems to be well settled by adjudged cases, that, in a suit against an acceptor, for non-payment, according to a general and *unqualified acceptance,* it is not necessary to aver a formal demand or a presentation of the bill for payment. *Chitty on Bills,* 249. And had *Loughborough* been beneficially interested as endorsee, still, as the suit was brought, not by him, but by the *drawers,* the statute of 1837 did not require a transcription of the endorsement into the petition, and the acceptance and *plea* waived all *proof* of the averment of such endorsement. But the averment that *Loughborough* was a mere agent of the *drawers,* and therefore only a nominal endorsee, showed that, virtually, the bill was made payable to the *drawers* themselves, and that, therefore, an *averment* of payment by them to him, or of any *formal* re-endorsement to them, or of any *actual* erasure of the endorsement to him, was not necessary to their right of action against the acceptor. And moreover, the mere fact that the *drawers* have become the *holders* of the bill, was *prima facie* evidence that they had acquired it rightfully, and were entitled to the exclusive benefit of it. *Bell* vs. *Morehead,* 2 *Marshall,* 161–2.

Wherefore, it is considered that there is no available error in the judgment, and that it be therefore affirmed.

*⁎⁎⁎ There were two other similar cases decided at the same time.*

*April 27.*

### PETITION FOR A RE-HEARING.

[By Mr. Pirtle.]

THE counsel for the appellant most respectfully asks the Court to grant a re-hearing in these cases.

The first section of the statute referred to in the opinion, is to some extent ambiguous, it must be acknow-

ledged; but he humbly conceives, there is no ambiguity, or any thing left for inference, in regard to the character of the bill upon which this kind of action is given. The bill must be protested; not to give a right of action, but to give this action.

The Legislature has said, in express and clear language, which conveys one distinct meaning, and not a cloudy, double, doubtful meaning, " That it shall be lawful for the holder of any *protested* bill of exchange to fill up the assignment, and file a joint or several petition, in any Circuit Court having jurisdiction, against the drawers, endorsers and acceptors; or a joint petition against any two or more of the drawers and acceptors, if the bill be accepted." Then follows the form.

The form is not appropriate to the suit of the drawer against the acceptor; nor is it applicable to the suit by the payee against the acceptor; nor the payee against the drawer. The section is ambiguous, because it does not indicate certainly, whether the new mode of suit shall be only between those who are not original parties to the bill, or not. But it seems to the counsel, that its ambiguity is only in this; and that, to give it such a construction as would confine the remedy to the action of the indorsee against the original parties, or, at any rate, to that of the payee against the other parties, would give to every word in the first clause its plain meaning and effect, and do no violence to the form as set out. This, he would infer, was the motive of the Legislature, for then, sureties on bills, and persons who had advanced money on them, would have that brisk remedy which they deserve.

The second section of the act, in reference to promissory notes, points directly to this interpretation, shows the intention of the Legislature and removes the ambiguity.

That the holder is " to fill up the assignment"—and that the form says; " on which are the following endorsements, by which the plaintiff hath become the proprietor thereof," would seem to exclude the idea of a suit by the drawer against the acceptor, notwithstanding some ambiguous expressions, as the language could apply fairly

VIII. 18

Spring Term
1839.

*Rice*
vs
*Hogan &c.*

and naturally in all instances, except in suits between the original parties to the bill.

But, whatever may be the proper construction of the statute in these respects, the counsel respectfully contends, that the remedy cannot be given by the Court to any one but the holder of a *protested bill,* whether he be drawer, payee or indorser. These are no doubtful words; there is no ambiguity to be met with, on this part of the subject. It is not made lawful for any holder of any and every bill, to institute this action; more is required. The drawer is truly the holder of a bill, when it is in his hands, and belongs to him; and, unless the remedy were intended to be given only to sureties and persons who had advanced money on bills, the counsel does not see that there could have been any reasonable motive for excluding the drawer from the new remedy, whether the bill were protested or not, or whether it were to be deemed an inland bill, or a foreign bill. But, if the Legislature had said, " foreign bill," the Court could not give the remedy on a " domestic bill," because there might be no sufficient imaginable motive for excluding it. So, here, the Legislature has said, " it shall be lawful for the holder of a protested bill;" but the drawer in this instance, though a 'holder,' is not the holder of a 'protested bill;' and it is not made lawful for him to sue. That it might well have been made lawful, has not made it lawful. The Legislature might have made it lawful for the holder of any bill written in red ink, to bring this suit; and none could see why the holder of a bill written in black ink, should not have the same remedy; but he would not therefore have the remedy.

All *protested* bills are *dishonored* bills, but all dishonored bills are not protested bills, any more than a protested bill is, for that cause, a foreign bill, or an inland bill. ' Dishonored' does not mean ' protested;' and therefore, it is respectfully urged that the Court is not at liberty to adopt this word in place of the other, which the proper department of the government has used.

The Legislature may have had allusion to bills drawn in one State, payable in another State, and to bills

drawn out of the United States, payable in the United States. Heretofore, the former class had not been adjudged to be foreign bills by this Court, and various decisions in reference to them, had obtained in the different States—some holding them to be foreign bills, and others, inland bills, in distinction to domestic bills, upon which a protest was not deemed necessary, any more than on domestic bills, to maintain the action of assumpsit against any defaulting party. And the inference is not clear, and he thinks is not deducible at all, that the Legislature intended to give the action of petition on such bills as these in suit, in all instances where the action of assumpsit would lie.

A protest and notice are required in the first section, and these requirements are taken notice of in the sixth section giving the petition on domestic bills &c. " as authorized in cases of *protested* bills, except that the petition need not allege a protest and notice thereof, unless the protest and notice shall have been made." This seems to fortify both positions taken on behalf of the appellant.

*Henry Pirtle.*

### RESPONSE TO THE PETITION.

[By the Chief Justice.]

*May* 7.

AFTER full consideration of the petition, our opinion is unchanged.

We still think that—when all the provisions of the act of 1837 are duly considered and harmonized—" the holder of any protested bill of exchange" in the first section was intended to embrace the holders of all bills of exchange, whether foreign or domestic, which, in the substantial and popular sense had been *protested;* that is, which the drawee had refused to accept or the acceptor had refused to pay; and this deduction is, in our judgment, confirmed by a proviso in the sixth section which applies to the first as well as other sections, and which proviso is in these words:—" nor shall the statement of " protest and notice in the petition, make it necessary to

Spring Term
1839.

"prove such protest and notice, *when the law does not make* *it necessary, to charge the defendants.*"

This clearly implies that a petition may be maintained on a bill never, in form, protested—whenever a protest is not necessary to give a right of action; and that, of course, it is not necessary to the maintenance of a petition, unless it be indispensable to the holder's right of action.

Wherefore the petition for a re-hearing is overruled.