BANK OF TENNESSEE
*vs*
SMITH.

---

## Bank of Tennessee *vs* Smith.

### APPEAL FROM THE TODD CIRCUIT.

*Bills of Exchange. Evidence. Assumpsit. Debt.*

JUDGE SIMPSON delivered the opinion of the Court.

THIS is a *joint* action of assumpsit, brought by the President and Directors of the Bank of Tennessee, against the drawers and the defendant Smith, as surviving endorser of a bill of exchange for twenty five hundred dollars, payable four months after date, drawn on Roberts & Williams, of New York, and purchased by the Branch Bank of Tennessee in Clarksville.

The Court below, having, after the plaintiffs had closed their evidence, instructed the jury as in the case of a non suit, a verdict and judgment were rendered for the defendant Smith, the suit having been

ASSUMPSIT.

Case 135.

October 3.

Case stated.

BANK OF TEN-
NESSEE
.vs
SMITH.

A bill of ex-
change need not
be presented un-
til due; but if
presented and
dishonored, no-
tice must be giv-
en to such par-
ties as it is in-
tended to hold
responsible.

A promise to pay
after a bill be-
comes due, is a
waiver of notice
or an admission
that it had been
given. But
where the bill
is presented be-
fore due and
not accepted,
there is no infer-
ence of notice to
the parties, or
waiver of proof
of notice by proof
of a promise to
pay.

previously abated as to the other defendants, from which the plaintiffs have appealed.

Before the maturity of the bill, it was presented for acceptance, which was refused. For the purpose of proving notice to Smith, of its non acceptance or the waiver of notice by him, the plaintiffs on the trial, offered as evidence a note for twenty five hundred dollars, executed by the drawers of the bill of exchange, and endorsed by Smith and others, together with proof that the note was presented to the bank in Clarksville, for discount, for the purpose of paying the bill, after it had been dishonored, and that the defendant Smith, expressed a wish to have the note discounted, and the money so applied. This evidence was rejected.

Although the holder of a bill, payable a given number of months after its date, is not bound to present it to the drawer for acceptance, until it becomes due, yet if he does present it for acceptance, and the bill is dishonored, he is bound to give due notice to those whom he intends to hold responsible for its contents: 7. B. Mon. 17, and cases there cited.

A promise to pay after a bill becomes due, is considered an admission of regular presentment for *payment*, and of due notice, or at least waives the objection that it has not been done. But there is a distinction between the effect of a promise to pay, in regard to the inference of notice, in cases of non payment and non acceptance, where a bill has been presented for acceptance before it becomes due. In the former case, the party is supposed to have known when the bill became due, and must actually know, or might readily have ascertained, whether or not there had been laches; and, therefore the inference arises from a promise to pay, of a regular presentment for *payment*, and of due notice. But in the latter case, the fact of a bill having been presented for acceptance before it falls due, and dishonored, lies peculiarly in the knowledge of the party presenting it, and there is no inference that a party who promises to pay after the bill falls due, knew of the refusal to accept, or of the neglect to give notice of such acceptance: (*Chitty on Bills*, 538.)

If the facts which the plaintiffs offered to prove, are equivalent to a promise to pay, which is somewhat questionable, still as the object of the testimony was to prove notice of *non acceptance*, and of *non payment*, it was properly rejected by the Court.

To prove due notice of non acceptance, the plaintiffs then introduced an entry in the handwriting of Edward B. Roche, made on the book, of the notice of protest for non acceptance, transmitted by the Notary Public, in the city of New York, who demanded acceptance; showing that due notice of non acceptance had been given to the defendant; and proved that Roche was the Cashier of the Branch Bank located at Clarksville, Tennessee; that it was a part of his regular business to distribute notices of the protest of paper belonging to the Bank, and keep memoranda, like the one then adduced, of such facts, and that he was dead. The defendant moved the Court to exclude this evidence. The motion was overruled, and we think the Court did not err in so doing. Such entries made in the regular course of business, are competent evidence, after the death of the person by whom they were made: *Welsh* vs *Barret*, (15 *Mass. Rep.* 360.) *Nichols* vs *Webb* (8 *Wheaton* 326. 1. *Greenleaf on evidence* 116.)

After the bill was purchased by the Bank, Roche, the Cashier of the Branch at Clarksville, filled up the endorsement of Smith, making it payable to himself or order, and endorsed it in full to Jas. W. Horton, Cashier of the mother Bank, who endorsed it in full to O. J. Camman, the Cashier of the Merchant's Bank, of the city of New York, to which Bank it was transmitted for presentation and collection. These endorsements were all upon the bill when it was presented and protested for non acceptance. Before, however, the present suit was brought, the Attorney for the Bank struck out so much of the endorsement by Smith to Roche the cashier, as made the bill payable to the latter, and filled up the endorsement directly to the Bank, striking out at the same time all the subsequent endorsements.

The Court at the instance of the defendant, excluded the protest for non acceptance, as evidence from the jury,

*Margin note:*
BANK OF TENNESSEE
vs
SMITH.

Entries made by Clerks and officers of Banks in the regular course of business, are evidence after the death of the person making them.

BANK OF TEN-
NESSEE
*vs*
SMITH.

The filling up
and erasing as-
signments upon
a bill of ex-
change endorsed
in blank, is a
matter within the
discretion of the
holder of the bill:
(18 *John.* 320;
3 *Marsh.* 158;
3 *Wheat.* 172;
1. *Dana*, 334.).

on the ground of a variance between the bill sued on, and the one described in the protest.

Where the holder of a bill fills up a blank endorse-ment, by directing payment to be made to another, merely for collection, and the agent returns it unpaid, the owner may strike out the transfer, and make the bill payable to himself: (18 *Johns.* 230.) He may also strike out any subsequent endorsements that have been made for the same purpose: *Bell* vs *Morehead*, (3 *Mar*. 158.) *Duzan* vs *United States*, (3. *Wheat.* 172. 1 *Dana*, 334.)

In this case the bill belonged to the plaintiffs and the endorsement by Roche, and the subsequent endorse-ments, were made merely for the purpose of collection; when, therefore, the bill returned dishonored to the possession of the owners, they had a right to strike out these endorsements, and make the bill payable directly to themselves. Having done so, it was correct in set-ting out the bill in the declaration, to omit altogether those endorsements which had been stricken out. There was no variance between the bill exhibited in evidence, and the one sued upon.

A protest of a
bill of exchange
made while it
appears by the
endorsement, to
be the property
of one, is proper
testimony when
the endorsement
is stricken out
and it appears to
be the property
of       another,
where the identi-
ty of the bill ap-
pears.

As the plaintiffs had a legal right to strike out these endorsements, and sue in their own name, they must have had a right to use the protest in evidence, although it showed endorsements to have been upon the bill at the time of the protest, which were not on it at the time of the trial. The right to do the first necessarily implies the right to do the latter. Indeed, there is no substan-tial reason opposed to it. The identity of the bill sued on, with that described in the protest, was made clearly manifest by the evidence, and nothing more was neces-sary to render the protest admissible. The endorse-ments on the bill were stricken out, merely by drawing a line across them with a pen, but were still sufficiently legible, to prove by comparison, the identity of the bill, with the one which had been protested. The protest, therefore, was competent testimony, and should not have been excluded.

The statute of
1798, (2 *Stat.
Law,* 249,) au-

Could, however, the plaintiffs maintain, on this bill of exchange, a joint action of assumpsit against the draw-

ers and the defendant, who was an endorser? By the law merchant, the action must have been several against the drawers and endorser, a joint action against them could not have been maintained. The statute of 1798, (2 *Stat. Law*, 249,) has given a joint action of debt against the drawers and endorsers upon a foreign bill of exchange. But it has been decided that the statute makes a discrimination between foreign bills and those drawn by persons residing in one State, upon others residing in another, and fails to give a joint action in the latter case, leaving the remedy as it existed previous to the passage of the act: *Cresson* vs *Williamson &c.* (1 *Mar.* 455.)

When, by the provisions in the charter creating a bank, all bills discounted by it were placed upon the same footing of a foreign bill, as to the right of action and mode of recovery thereon, it has been repeatedly decided by this Court, that a joint action against the parties might, under the act of 1798, be maintained upon a bill of exchange of any description, which had been discounted by the bank. But in this case there was no evidence of any law of the State of Tennessee, that a purchase of a bill by the bank of Tennessee placed it upon the footing of a foreign bill.

It may be, that at the time the case of *Cresson* vs *Williamson &c.* was decided, bills of this description were regarded as inland, and not as foreign bills, although they are now considered as partaking of the nature, and subject to the rules of the mercantile law applicable to foreign bills: *Rice* vs *Hogan & Thompson*, (8 *Dana*, 133;) *Chenowith & Co.* vs *Chamberlain*, (6 *B. Monroe*, 60.) The Court, however, in that case, understood and construed the statute as discriminating between this class of bills of exchange, and those that properly fell within the denomination of foreign bills, and creating a distinction between them as it respected the remedy for their recovery, whether they were to be regarded as belonging to the one class or the other.

But whether that exposition of the statute be correct or not, we are satisfied that, in giving a joint remedy against the parties by action of debt, the statute does

*Margin notes:*

BANK OF TENNESSEE
vs
SMITH.

thorizes a joint action of debt upon a bill of exchange or note possessing the dignity of a foreign bill of exchange, against drawer, endorser, &c., does not authorize a joint action of assumpsit.

Where a note has been discounted by a bank of a sister State, to authorize in this State a joint action of debt against drawer and endorser, it should appear that by the laws of such State, the instrument possesses the dignity of a foreign bill.

not authorize a. joint action of assumpsit. The under-taking of the parties is several and not joint, and, therefore, at common law, no joint promise being implied, a joint action could not be maintained on a foreign bill of exchange.

<div style="margin-left:note">No statute of Ky. authorizing a joint action of assumpsit on a bill of exchange, but the action of debt or petition and summons.</div>

This statutory remedy being in derogation of the common law, must be strictly construed: (5 Monroe, 119; 2 J. J. Marshall, 148.) The statute expressly prescribes the action of debt, and does not authorize any other form of action. The act of 1837, (3 Stat. Law, 491,) authorizes a joint suit, by petition, against the drawers, endorsers and acceptors of bills of exchange; but no statute authorizes a joint action of assumpsit.

The plaintiffs having misconceived their form of action, the instruction to the jury to find, as in the case of a non-suit, was correct. As the suit was brought wrong, and the declaration upon its face was bad, the abatement against all the defendants except Smith, the surviving endorser, did not cure the defect: (2 Mar. 140; 5 Monroe, 119.)

Wherefore, the judgment is affirmed.

