(21 App. Div. 392.)

### GILLET v. BANK OF AMERICA.

(Supreme Court, Appellate Division, First Department. October 22, 1897.)

PLEDGE—CONSTRUCTION OF CONTRACT.

    A firm borrowed $35,000 from a bank, for which it gave its note, containing the following clause: "Having deposited with the said bank, as collateral security for the payment of this or any other liability or liabilities of the undersigned to the said bank, due or to become due, or which may hereafter be contracted or existing, the following property, viz." etc. *Held*, that the right of the bank in the collateral applied, not only to transac-

tions occurring directly between it and the maker of the note, but also to a note of the maker purchased by it from a third person.

Action by Joseph Gillet, as assignee, etc., against the Bank of America. There was a judgment for plaintiff, and a motion for new trial by defendant on exceptions was ordered to be heard in the first instance at the general term. Granted.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and WILLIAMS, JJ.

Theron G. Strong, for plaintiff.
C. E. Rushmore, for defendant.

VAN BRUNT, P. J. The firm of Dan Talmage's Sons was a depositor with the defendant, and on the 22d of January, 1896, procured from the defendant a loan of $35,000, and executed a note therefor, which contained, in addition to the contract of repayment, provisions relating to the application by the bank of certain collateral securities then deposited by that firm with the bank. The firm had a considerable amount of paper outstanding, but the bank had not for some time discounted any of it, and this was the only loan that the firm had at that time from the bank. On the 4th of March, 1896, a note for $5,000 held by the New York Life Insurance & Trust Company matured. It was payable at the Bank of America, and, upon presentation, was not paid, and, after 3 o'clock, was delivered by said company to its lawyer for collection. He also demanded payment of the note from the firm, but it was not paid. He then learned that the defendant bank held collateral securities of the firm for the loan made to them, and he requested one of the firm to make over to the company any margins in the collaterals in payment of said note, which was not done. The note on the same day was subsequently offered to the defendant bank, which bought the same, and a check for the amount was given. On the 6th of March, 1896, the firm of Dan Talmage's Sons made an assignment for the benefit of creditors to the plaintiff. Some time thereafter the defendant bank realized sufficient money to cancel the original obligation of $35,000, but there still remained in its possession some bank stocks, the balance of the collaterals. The plaintiff, as assignee, claiming that the payment of the loan of $35,000 released those securities, duly demanded the possession thereof on the 2d of December, 1896, which demand was refused until the further obligation of $5,000 above referred to had been paid, upon the ground that the contract contained in the $35,000 note gave to the bank the right to apply the securities in its hands to the payment of the $5,000 note as well as of the original obligation of $35,000. The plaintiff thereupon, in or about January, 1897, commenced this action to recover the value of said collaterals. Upon the trial the court held that the plaintiff was entitled to recover, and directed a verdict in his favor, and ordered the exceptions to be heard in the first instance at the appellate division; the judgment in the meantime to be suspended.

The sole question which is presented upon this appeal is whether, by the terms of the stock collateral note, the defendant had a right to hold the securities for the payment of the $5,000 note which it had

bought under the circumstances above mentioned from the New York Life Insurance & Trust Company. The note, so far as it is necessary to consider the same in reference to the question at bar, is as follows:

"$35,000.                                New York, Jany. 22d, 1896.

"On demand, the undersigned, for value received, promise to pay to the Bank of America or order, at its banking house in the city of New York, in funds current at the New York Clearing House, thirty-five thousand dollars, with interest at the rate of 6 per cent. per annum; having deposited with the said bank, as collateral security for the payment of this or any other liability or liabilities of the undersigned to the said bank, due or to become due, or which may hereafter be contracted or existing, the following property, viz.: Memorandum of Rice, per statement attached. The undersigned hereby agrees to deposit with the said bank such additional collateral security as the said bank may from time to time demand, and also hereby gives to the said bank a lien for the amount of all the liabilities aforesaid upon all the property or securities at any time given unto, or left in the possession of, the said bank by the undersigned, and also upon any balance of the deposit account of the undersigned with the said bank."

This language clearly authorized the bank to hold the collateral securities for the payment of any liability of the maker of the note to the bank, due or to become due, or which might thereafter be contracted or existing, and gave the bank a lien for the amount of all such liabilities upon all the property or securities given or left in the possession of the bank by the maker of the note, and also upon any balance of his deposit account with the bank. There is nothing in the note which limits the rights of the bank to transactions occurring directly between the maker of the note and the bank. It covers liabilities due or to become due,—not only those which might thereafter be contracted between the maker and the bank, but those which might thereafter exist; making an evident distinction between those which might be contracted directly between the parties, and those which might arise in some other way, such as by the purchase of business paper. If it had been intended to limit the rights of the bank to transactions which took place directly between the parties, there would have been no necessity of, and no propriety in, making use of the words "contracted or existing." The language of the note would have been limited to the word "contracted," and by the use of the word "existing" it was the evident intention of the parties to extend the terms of the note to cover liabilities other than those which had been contracted immediately between the parties. Therefore, until the payment of the stock note, either by the application of collaterals or otherwise, if in any manner the makers of the note became indebted to the bank such indebtedness was covered by the terms of the stock note. No significance whatever could be given to the language, "due or to become due, or which may hereafter be contracted or existing," if the interpretation placed upon it by the trial court should obtain.

The exceptions should be sustained, and a new trial ordered, with costs to the defendant to abide the event. All concur.