HENRY A. RICHARDSON, trustee, *vs.* WINNISIMMET
NATIONAL BANK.

Suffolk.   November 30, December 1, 1904. — September 8, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Bills and Notes.   Bankruptcy.   Words,* "Holder or holders."

A note, payable to a bank or its order, stated that it was secured by the deposit of certain collateral securities named " with authority to sell the same, or any collaterals substituted for or added to the above, without notice, either at public or private sale, or otherwise, at the option of the said holder or holders hereof, on the non-performance of this promise, he or they applying the net proceeds to the payment of this note and accounting to us for the surplus, if any; and it is hereby agreed that such surplus, or any excess of collaterals upon this note, shall be applicable to any other note or claim against us held by said holder or holders."   Before the maturity of the note the maker became insolvent and made a general assignment for the benefit of creditors.   A few days later the bank holding the note and the collateral securities sold and transferred them to another bank, which held a note indorsed by the maker of the purchased note and bought the note and the collateral securities for the purpose of applying any surplus from the sale of the collateral to the payment of this other note.   On the sale of the securities there was such a surplus which the purchasing bank so applied.   Within four months from the date of the transfer, but more than

seven months from the giving of the note and collateral, the maker of the note was adjudicated a bankrupt. His trustee in bankruptcy brought a suit in equity against the purchasing bank to compel it to account for the surplus after the payment of the first note. *Held,* that, whether the note was negotiable or not, the words "holder or holders" showed the intention of the parties that the right to enforce payment should pass upon the order of the payee, that the person thus designated became the holder with the power to sell the securities in accordance with the terms of the note, and that the defendant as such holder had the right given by the note to apply the surplus to the payment of any note held by it against the maker of the note in question. *Held, also,* no fraud being charged, that the transaction was not in violation of the bankruptcy act of 1898, the transfer to the defendant within four months of the filing of the petition in bankruptcy having been made, not by the bankrupt, but by a creditor who held the securities under a valid assignment.

BILL IN EQUITY, filed February 20, 1904, by the trustee in bankruptcy of J. Francis Brown, for an accounting, and to compel the defendant to pay to the plaintiff as such trustee whatever should be found to be the value of certain securities sold by the defendant, after deducting the amount due on a certain note for $15,000 given by Brown to the County Savings Bank and by that bank transferred to the defendant.

The bill alleged :

1. That on June 27, 1903, and for a long time before, J. Francis Brown, late of Cohasset, was engaged in the banking and brokerage business in the city of Boston under the name and style of J. Francis Brown and Company, and was a member of the Boston Stock Exchange ; that on June 27, 1903, Brown, being then insolvent, made a general assignment for the benefit of his creditors to George L. Huntress, of Winchester ; that a copy of the assignment was filed at the office of the city clerk of the city of Boston on June 27, 1903, and notice of the assignment was sent to all of the creditors of Brown ; that the defendant knew of the assignment at or about the time it was made ;

2. That on October 5, 1903, Brown was adjudicated a bankrupt by the District Court of the United States for the District of Massachusetts; that on October 31, 1903, at the first meeting of the creditors of Brown's estate the plaintiff was elected trustee of the estate and qualified by giving bond to the satisfaction of the court ;

3. That on February 27, 1903, Brown gave his promissory note for $15,000 to the County Savings Bank, in renewal of another note previously given by Brown to that bank, and pledged to that bank with the note as collateral security therefor

certain certificates of stock and certain bonds, enumerated in the note; that on or about June 4, 1903, there was due upon the note the sum of $10,000 only, the difference of $5,000 having been paid previously by Brown;

4. That before maturity of the note the County Savings Bank had delivered to Brown certain of the securities pledged and had received back from Brown in substitution therefor certain other securities; that the County Savings Bank held such substituted securities under the same terms and conditions as it had held the securities originally pledged to it;

5. That on or about June 27, 1903, the defendant was the holder of a certain other promissory note for $5,000 made by one Charles H. Rollins and indorsed by Brown; that this note for $5,000 was dated February 28, 1903, was payable six months after date, and was secured by certain other collateral deposited with the First Ward National Bank of Boston and held by the First Ward National Bank as security for that note;

6. That the value of the property deposited with the County Savings Bank as security for the note of $15,000 was at all times greatly in excess of the amount due on that note on June 1, 1903, to wit, $10,000; that the County Savings Bank well knew this fact, and that knowledge thereof was conveyed to the defendant before the acts here complained of;

7. That soon after the date of the assignment by Brown to Huntress, but before the maturity of the note held by the County Savings Bank, that bank transferred the note to the defendant and delivered to the defendant all of the collateral security pledged with the note;

8. That the defendant after the transfer to it of the note sold all of the collateral security, and that the amounts received therefor were greatly in excess of $10,000, the amount then due upon the note; and that the defendant holds the proceeds of the securities in excess of $10,000 and refuses to pay the same to the plaintiff, but wrongfully has applied the same in payment of the note for $5,000 before mentioned;

9. That the transfer of the note and securities as before set forth was made in pursuance of a conspiracy or plan between the County Savings Bank and the defendant for the purpose and with the intent of defrauding the creditors of Brown's estate,

and of giving a preference to the defendant upon the note for $5,000 over the other creditors of Brown's estate; that the transfer was after both the County Savings Bank and the defendant knew that Brown was insolvent and had committed an act of bankruptcy; and that the transfer was in violation of the provisions and purposes of the United States bankruptcy law, and the laws of the Commonwealth; that the transfer was wrongful and in violation of the duty owed to Brown's estate by the defendant as transferee of the note and securities with notice of the duty owed to Brown's estate by the County Savings Bank in respect to the securities; and that the defendant sold part or the whole of the securities before the maturity of the note and in violation of the terms of the note;

10. That the plaintiff is unable to say whether the securities were sold for their market value or not;

11. That the plaintiff has demanded of the defendant that it account to him for the securities transferred to it by the County Savings Bank and pay to him the market value thereof as of the maturity of the note after deducting the amount due on the note, namely, $10,000, but the defendant has at all times refused to comply with this demand.

The bill prayed:

1. That the defendant be ordered to account to the plaintiff, as trustee in bankruptcy of the estate of J. Francis Brown, for the value of all the property which came into its possession or control, and which had been pledged at any time as security for the note of $15,000 given to the County Savings Bank, and by it transferred to the defendant as alleged;

2. That the defendant be ordered to pay forthwith to the plaintiff as trustee whatever sum shall be found upon such accounting to have been the market value of the property after deducting the amount due upon the note;

3. For further relief.

The note of which a copy was annexed to the bill was as follows:

"$15,000 —                    Chelsea, Mass., Feb. 27, 1903.

" For value received, we, J. Francis Brown & Co., as Principal, and

as Sureties, jointly and severally promise to pay to the County

Savings Bank, or order, at its Banking Room, Chelsea, Mass., fifteen thousand dollars, in six (6) months from date, with interest to be paid semi-annually at the rate of 5 1-2 per cent per annum.   We having deposited with this obligation as Collateral Security, 100 E. B. Land, 140 U. S. Oil, 16 West End Com., 1 Atch. Pfd., 2 Pullman, 100 Winona, 20 O. Dom., 13 Atch. Com., 130 Arcadian; 60 Cent., 400 Guana, 2000 Bth R., 5 Royall, 104 Parrot, 100 Utah, 1000 C. Br. Q. Jo. 4s with authority to sell the same, or any collaterals substituted for or added to the above, without notice, either at public or private sale, or otherwise, at the option of the said holder or holders hereof, on the non-performance of this promise, he or they applying the net proceeds to the payment of this note and accounting to us for the surplus, if any; and it is hereby agreed that such surplus, or any excess of collaterals upon this note, shall be applicable to any other note or claim against us held by said holder or holders. Should the market value of any security pledged for this loan, in the judgment of the holder or holders hereof, decline, we hereby agree to deposit on demand (which may be made by a notice in writing sent by mail or otherwise to our residence or place of business) additional collateral, so that the market value shall always be at least 30 per cent more than the amount of this note, and failing to deposit such additional security this note shall be deemed to be due and payable forthwith, anything hereinbefore expressed to the contrary notwithstanding, and the holder or holders may immediately reimburse themselves by the sale of the security; and it is hereby agreed that the holder or holders of this note, or any person in his or their behalf, may purchase at any such sale.                    " J. Francis Brown & Co.,
                              Albert T. Fletcher,
                              A. Edgar Goldie."

Here followed a list of securities withdrawn and of other securities substituted.

The defendant's answer admitted the allegations in the first five paragraphs of the bill.

In answer to paragraph 6 of the bill, it alleged, that after June 27, 1903, the value of the property deposited with the County Savings Bank as security for the note dated February

27, 1903, was in excess of the amount due on that note, but that the excess of value at no time amounted to more than $2,000. It admitted that both the County Savings Bank and the defendant before the purchase of the note by the defendant understood that the value of the collateral was somewhat in excess of the amount due on the note.

In answer to paragraph 7 of the bill the defendant alleged, that on or about June 30, 1903, and before the maturity of the note held by the County Savings Bank, that bank sold and transferred the note to the defendant and delivered to the defendant all the collateral security pledged with the note, and that the defendant paid the County Savings Bank for the note thus secured the sum of $9,920.83.

In answer to paragraph 8 of the bill the defendant alleged, that after the transfer to it of the note it sold all of the collateral security, the total amount received being $11,454.36, an amount slightly in excess of the amount due upon the note dated February 27, 1903; that it satisfied that note out of the proceeds and applied the excess toward the payment of the note of $5,000, dated February 28, 1903. It denied that the application was wrongful and alleged that it was made legally and properly in accordance with the terms of the note dated February 27, 1903. It further alleged that it had so far received from the First Ward National Bank as its share of the proceeds of the collateral held as security for the payment of the $5,000 note dated February 28, 1903, on September 30, 1903, the sum of $3,500, and on April 6, 1904, the sum of $500; that it applied those sums so far as needed toward the payment of the $5,000 note; that after applying all the proceeds there remained a surplus of a little less than $500; that the First Ward National Bank still holds some collateral, the value of which is uncertain; that the defendant will be entitled to something further from the proceeds of the remaining collateral to be applied toward the payment of the $5,000 note in case it shall be determined that the excess of collateral on the note dated February 27 is not applicable on the $5,000 note.

In answer to paragraph 9, the defendant denied that there was any conspiracy or plan between the County Savings Bank and it for the purpose and with the intent of defrauding the creditors

of the estate of J. Francis Brown and Company or of giving or securing any unlawful preference for the defendant. It admitted that the transfer was after both the County Savings Bank and the defendant knew that Brown had made a common law assignment. It admitted that the County Savings Bank sold and the defendant bank purchased the note and collateral dated February 27, 1903, for the purpose of securing payment in full of the $5,000 note out of any excess of collateral which there might be after the payment of the note of February 27. It alleged that that note was upon a printed blank furnished by the County Savings Bank. It denied that the purchase of the note was in violation of the provisions and purposes of the United States bankruptcy law or the laws of the Commonwealth. It denied that the transfer was wrongful and in violation of any duty owed to Brown's estate by the defendant. It admitted that it sold a portion of the securities held by it as collateral for the note before the maturity of the note, but denied that such sale was in violation of the terms of the note.

In answer to paragraph 10 of the bill the defendant alleged that all the securities held by it as collateral were sold for their market value.

In answer to paragraph 11 of the bill the defendant admitted that the plaintiff had demanded that it account to him for the securities transferred to it by the County Savings Bank, and pay to him the market value thereof, after deducting the amount due on the note, and alleged that it had not refused to account for the securities but had refused to pay over to the plaintiff any part of the proceeds of the securities, those proceeds having been applied toward the partial payment of the $5,000 note dated February 28, 1903.

In the Superior Court the case came on to be heard before *Fessenden*, J. upon the bill and the answer, and at the request of the parties the judge reserved it thereon for determination by this court, such decree to be entered as law and justice might require.

The case was argued at the bar in November and December, 1904, before *Knowlton*, C. J., *Morton*, *Barker*, *Hammond*, & *Loring*, JJ., and afterwards was submitted on briefs to all the justices.

*A. W. Putnam*, for the plaintiff.

*H. R. Bailey*, for the defendant.

HAMMOND, J. Whether the note given to the County Savings Bank is negotiable we have not found it necessary to decide. See *Mahoney* v. *Fitzpatrick*, 133 Mass. 151; *Richards* v. *Barlow*, 140 Mass. 218; R. L. c. 73, §§ 19, 21. Upon its face it is made payable to the bank " or order," and, as said by Holmes, J. in construing a note in *Richards* v. *Barlow*, p. 221 : " The form of the instrument plainly imports that it was drawn on the assumption that it would be negotiable, and, even if this assumption was erroneous, it must be taken into account none the less, if necessary, in interpreting the meaning of the power."

This note plainly shows the intention of the parties that the right to enforce the payment of it should pass to the order of the payee, and that the party thus designated would be the holder. If it was the intention of the parties that the only holder should be the payee, then there was no occasion for using the phrase " holder or holders." The phrase " said holder or holders " is broad enough to include any person holding the note under the order of the payee. There certainly would seem to be no reason why the power to sell the securities for the payment of this note should not pass with the note. We do not understand the plaintiff to contend to the contrary as to so much of the power. We see no sound reason for holding that " holder or holders " means one thing in one part of the note and another thing in another part. It seems clear that the holder who can exercise the power to sell the collateral and apply the proceeds to the payment of this note is the same holder who has the right to apply the surplus to any note held by him against the maker of the note. If it be said that this is a curious and unusual way of doing business, and that such intention on the part of the maker is not to be found except where clearly expressed, the answer is that in this case it is clearly expressed. The words are broad enough to show such intent, and any other interpretation fails to give due force to their meaning. Moreover, to hold otherwise is to give one meaning to the words " holder or holders " in one place, and another meaning in another. The case differs in material respects from *Gillet* v. *Bank of North America*, 47 N. Y. Supp. 558, and 160 N. Y. 549, cited by the plaintiff.

Nor is the transaction as thus interpreted in violation of the bankrupt act. In *Thompson* v. *Fairbanks*, 196 U. S. 516, 526, it is laid down that "Under the present bankrupt act, the trustee takes the property of the bankrupt, in cases unaffected by fraud, in the same plight and condition that the bankrupt himself held it, and subject to all the equities impressed upon it in the hands of the bankrupt, except in cases where there has been a conveyance or incumbrance of the property which is void as against the trustee by some positive provision of the act." The case is not one of fraud. While solvent, Brown, the maker of the note, assigned a portion of his assets to the County Savings Bank as security for all debts due to such of his creditors as came within a certain description, namely, any one who held the note in which the assignment is contained. This he had the right at common law to do, and the trustee takes the bankrupt's estate subject to this transfer unless this transfer is forbidden by some positive provision of the bankrupt act. The only provisions of that act which it can be contended render this transaction void are those found respectively in §§ 60 a and 60 b as to preferences, and § 67 e as to conveyances to hinder, delay and defraud. After *Humphrey* v. *Tatman*, 198 U. S. 91, this transaction cannot be held to be a legal proceeding under § 67 f.

There is no allegation in the bill that the assignment of the securities contained in the note to the County Savings Bank was in fact made with intent to hinder, delay or defraud. Hence it is not shown to be within § 67 e. The transaction, so far as respected the securities, was a conveyance in trust, and not the mere creation of an agency. What took place was an assignment, made more than four months before the filing of the petition by Brown then solvent, of a part of his assets for the benefit of whatever creditor should hold the note containing the assignment. Nothing was done by Brown within the four months. All that was done within the four months was done by a creditor for whose benefit the prior valid assignment had been made, acting not as a mere agent of Brown, but under a valid conveyance in trust. This was not an act by Brown within the four months and hence not within either § 60 a or § 60 b.

*Bill dismissed with costs.*