# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

---

## Oleon *v.* Rosenbloom, Appellant.

*Promissory notes—Negotiable collateral note—"Holder"—Right of indorsee to apply collateral.*

Where a negotiable collateral note recites that certain warehouse certificates for whisky attached to the note are pledged "as collateral security for payment of this or any other liability or liabilities of the maker to the holder of the note," and empowers the holder on default to sell the collateral and apply the proceeds "to pay any, either or all of said above-mentioned liabilities as the holder hereof shall deem proper," an indorsee of the note is a holder within the meaning of the instrument, and has a right to retain the collateral as security, not only for the note, but also for any other debt due him by the maker.

Argued April 28, 1913. Appeal, No. 86, April T., 1913, by defendants, from judgment of C. P. Allegheny Co., Nov. T., 1909, No. 568, on verdict for plaintiffs in case of M. Oleon and Eugene Herzog, trading as Keystone Distributing Company, v. S. Rosenbloom, trading as S. Rosenbloom and Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass for an alleged wrongful conversion of whisky. Before REID, J.

From the order it appeared that on June 28, 1909, the Keystone Distributing Company executed to J. M. Selden Co. the following note:

"450.00     PITTSBURG, PENN'A, June 28, 1909.

"Ninety days after date, for value received, we promise to pay to the order of J. M. Selden Co., Four Hundred Fifty and no/100 Dollars, with interest at the rate of     per cent per annum, having deposited herewith as collateral security for payment of this or any other liability or liabilities of     to the holder hereof, now due or to become due, or that may be hereafter contracted, the following property, viz: W. H. R. attached 10 each Sp. 05—06—07 Moss, the market value of which is now $     , with the further right to call for additional security from time to time in case there should be a decline in the market value thereof, and on failure to respond, this obligation shall be deemed to be due and payable without demand or notice, with full power and authority to the holder hereof to sell and assign and deliver the whole of the above mentioned security, or any part thereof, or any substitute thereof, or any addition thereto, at any Broker's Board, or at public or private sale, at the option of the holder hereof, on the non-performance of this promise or the non-payment of any of the liabilities above mentioned, at any time or times hereafter, without demand, advertisement or notice, and with the right to purchase as any other bidder at any public sale hereof, held by virtue hereof. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either or all of said above mentioned liabilities, as the holder hereof shall deem proper, returning the overplus to the undersigned.

"KEYSTONE DISTRIBUTING CO.,

"Per EUGENE HERZOG.

"Payable at Second National Bank.

(Endorsed)

"Pay to order S. Rosenbloom & Co. without recourse.

"J. M. SELDEN Co.,

"J. M. SELDEN, Treas."

On July 13, 1909, a similar note for $150 was made and delivered.

The defendants S. Rosenbloom & Company were creditors of the Keystone Distributing Company, and when the notes became due and were unpaid they sold the whisky for $1,163.15, and applied the proceeds over and above the amount of the notes to other indebtedness.

The court charged as follows:

The case in which you have been sworn is, as you will recall from the statement of counsel, an action to recover the value of certain whiskies which were converted as is alleged, by the defendant, and involves the value of the certificates at the date of the conversion as I understand it. But at that time there was due to the holder of those certificates, obligations for which the certificates were given as collateral, to the amount of $600. As a matter of law, I instruct you that it is your duty to find a verdict for the plaintiffs in this case for the value of those whisky certificates at the time of their conversion, which counsel have agreed was the sum of $1,163.15. However, I also instruct you, as there was this valid subsisting indebtedness, which effected a lien in the hands of these defendants, as against these certificates, that in arriving at the amount of your verdict you must take into consideration the amount of that lien, to be charged as against the value of the certificates in the hands of the defendants, so that they will get credit for the sum which was undoubtedly due them, and without the payment of which the plaintiffs in this case could not have retaken their certificates. Consequently, you will allow a credit of $600, the amount represented by the two notes which are undoubtedly due these defendants. That will leave a balance due the plaintiffs, at the date of the conversion, of $563.15. Counsel have agreed that the interest upon that sum, computed to date, is $78.84, making a total of $641.99,

4       OLEON *v.* ROSENBLOOM, Appellant.

Charge of Court below—Opinion of the Court.   [55 Pa. Superior Ct.

which represents the balance due to the plaintiffs by reason of this conversion, after deducting the valid obligation to which I have already referred. I therefore instruct you that you will render a verdict for the plaintiffs for the sum of $641.99. [2]

Verdict and judgment for plaintiff for $641.99. Defendant appealed.

*Error assigned* amongst others was the charge of the court.

*A. C. Stein*, with him *A. C. Toplitz*, for appellant.— Under our note, which is payable to the order of the payee, there can be no doubt but that an indorsee, entitled to receive payment of the note, was intended to be such a holder as was empowered to sell the collateral on default, and an indorsee must likewise be included in the term holder as used in the clause specifying the liabilities secured, for it certainly would not seem logical to construe holder as meaning one thing in one part of the note and to give it a different construction in another part of the note: Champlin v. Smith, 164 Pa. 481; Richardson v. Nat. Bank, 189 Mass. 25 (75 N. E. Repr. 97); In re Salsbury, 60 Pittsburg Legal Journal, 441.

*James A. Wakefield*, with him *Ben. C. Tunison*, for appellee.—This case is ruled by Gillet v. Bank of America, 160 N. Y. 549 (55 N. E. Repr. 292).

OPINION BY PORTER, J., October 13, 1913:

The plaintiffs, being indebted to the J. M. Selden Company, executed and delivered to that company two negotiable collateral notes for the amount of said indebtedness and attached to said notes warehouse certificates for whisky to the aggregate amount of fifty-five barrels. These notes were payable to the order of J. M. Selden Company, ninety days after their respective dates, and that they were in all respects negotiable cannot be questioned. Each of the notes recited, as

the terms upon which the attached collateral was pledged, that the maker had deposited therewith as collateral security for the payment of this or any other liability or liabilities "to the holder hereof, now due or to become due, or that may be hereafter contracted, the following property," (here follows a description of the certificates attached) and authorized the sale of the property pledged "on the non-performance of these terms or the non-payment of any of the liabilities above mentioned, at any time or times hereafter, without demand, advertisement or notice. . . . And after deducting legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to any, either or all of said above mentioned liabilities, as the holder hereof shall deem proper, returning the overplus to the undersigned." The J. M. Selden Company indorsed and delivered these notes, before maturity and for full value, to the defendant. When the notes became due the plaintiffs were indebted to the defendant in the sum of $1,080.12, in addition to the amount of the notes. The plaintiffs tendered to the defendant the amount of their indebtedness represented by the notes and demanded the notes and the collateral thereto attached. The defendant asserted the right, under the covenants of the notes, to retain the collateral as security for the debt of $1,080.12 not represented by the notes and declined to surrender the certificates for the whisky. The plaintiffs then brought this action to recover the value of the whisky which had been pledged. It was admitted at the trial that the defendant had converted the whisky and that its value at the time the notes became due was $1,163.15. The plaintiffs recovered a verdict and judgment in the court below in the sum of $641.99, the excess in the value of the whisky over the amount of the notes. The defendant appeals from that judgment.

The only question in the case is whether the defendant, under the covenants of the notes, had the right to

retain the whisky as security for and apply the proceeds of its sale to an indebtedness due him from the plaintiffs other than that evidenced by the notes. The answer to this question must turn upon the construction given to the words "the holder," as used in the notes. The notes pledged the property "as collateral security for the payment of this" (the indebtedness represented by the notes), or any other liability or liabilities "to the holder hereof, now due or to become due, or that may be hereafter contracted." The court below was of opinion that this covenant must be construed as referring only to the original holder, the J. M. Selden Company, the payee of the notes; and for this reason declined the point of the defendant requesting binding instructions and subsequently overruled the motion for judgment non obstante veredicto in his favor. There can be no question that this defendant was the holder of the notes at the time they became due and he had the right to the security of the whisky for the payment, at least, of the amount of the indebtedness represented by the notes; to that extent it is conceded that he was "the holder," within the meaning of the covenant in question. If the view of the court below is correct then the term "the holder," in this covenant means one thing with regard to the indebtedness evidenced by the notes, and means another and entirely different thing with regard to the other liability or liabilities for the payment of which the property was pledged. The J. M. Selden Company would thus still have an interest in the collateral security although that company had sold to this defendant and received full value for the notes, as security for the payment of which the whisky was primarily pledged. If the covenant had been that the property was pledged "as collateral security for payment of this or any other liability or liabilities to the J. M. Selden Company," the result reached in the court below would have been the proper one: Gillett v. Bank of America, 160 N. Y. 549. Such was not the covenant in this case, the plain-

tiffs did not covenant that the property should be held for liability or liabilities to "the payee," or the J. M. Selden Company, or to any person other than "the holder."

The law presumes that, when the plaintiffs made their notes payable to the order of the J. M. Selden Company, they knew that title to the notes and the right to possession of the collateral would pass by indorsement and delivery, and that the party who thus acquired title to the notes and the collateral, before maturity, would be the holder. If it was the intention of the parties that the only holder should be the payee, then there was no occasion for making the notes payable to the order of the payee. These notes were in every respect negotiable and these plaintiffs had given them that character. The covenant which made available the property pledged, as security for liabilities of the makers to any person who might become a holder for value before maturity of the notes, may have tended to facilitate the negotiation of the paper, and the plaintiffs had the advantage of that fact. The term "holder," when used with regard to negotiable instruments, has a well-recognized legal meaning, and has been defined by statute. "Holder means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof:" Act of May 16, 1901, P. L. 194, sec. 191. "It seems clear that the holder who can exercise the power to sell the collateral and apply the proceeds to the payment of this note is the same holder who has the right to apply the surplus to any note held by him against the maker of the note. If it be said that this is a curious and unusual way of doing business, and that such intention on the part of the maker is not to be found except where clearly expressed, the answer is that in this case it is clearly expressed. The words are broad enough to show such intent, and any other interpretation fails to give due force to their meaning:" Richardson v. Winnisimmet National Bank, 189 Mass. 25. These plaintiffs launched their negotiable commercial paper upon the

business world, and they have no just cause of complaint that they were called upon to perform their covenants to "the holder" of that paper at the time it became due. There being no dispute as to the facts, the defendant was entitled to the binding instructions for which he prayed, and his motion for judgment non obstante veredicto should have prevailed.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the defendant non obstante veredicto.