COMMERCIAL NATIONAL BANK, Appellant, v. ABBIE G. MAY, Executrix, Appellee.

**BILLS AND NOTES:** Rights Enforcible Against Holder in Due Course. Rights available between the original parties to a negotiable promissory note are available against a holder in due course, provided such rights do not constitute a *defense* to the note. So held where the holder in due course was denied the right to apply a surplus of collateral to the discharge of independent and different notes held by him.

**BILLS AND NOTES:** Collateral—Right of Holder in Due Course. Whether a provision in a negotiable promissory note, to the effect that certain pledged collateral is to secure the payment of the note and of any other liability of the maker *"to the holder hereof,"* will enable a third party to purchase in due course said note, and sell the collateral to pay the same, *and then apply the surplus collateral on other unsecured claims of said maker, quaere.*

**CONTRACTS:** Construction—Inconsistent Written and Printed Terms. The *printed* terms of a promissory note, providing that pledged collateral shall be held for the payment of said note and for *any other* indebtedness of the maker held by the payee, must yield to a *written* receipt executed by the payee contemporaneously, or subsequently on adequate consideration, in which payee acknowledges that said collateral is held solely for the payment of said note. (Sec. 4616, Code, 1897.)

**CONTRACTS:** Consideration—Written Contract—Conclusive Presumption. A conclusive presumption prevails, *in the absence of contrary evidence*, that a written contract was on adequate consideration.

**CONTRACTS:** Consideration—Acquisition of Benefits. A written receipt which works a modification of a former contract in that it places certain collaterals in the possession of the beneficiary instead of a third party, and limits the purposes for which the collateral may be held, is supported by ample consideration.

**BILLS AND NOTES:** Notice of Infirmity. One may not say he is a holder in due course of a negotiable promissory note when, in relation to a matter vital to his rights, the note, on its face, contains a recital which he knows is untrue.

*Appeal from Floyd District Court.—C. H. KELLEY, Judge.*

NOVEMBER 18, 1919.

SUIT in equity, to establish and foreclose a lien upon collateral security.  Upon the trial had, the court granted the plaintiff partial relief, and denied other substantial relief prayed.  The plaintiff appeals.—*Affirmed.*

*J. C. Campbell,* for appellant.

*Blythe, Markley, Rule & Smith,* for appellee.

EVANS, J.—The plaintiff is a holder in due course of a certain note for $5,000, executed in his lifetime by George May, secured by shares of stock in the plaintiff corporation, the actual value of such stock being $11,000.

1. BILLS AND NOTES: rights enforcible against holder in due course. The plaintiff acquired said $5,000 note and the collateral by purchase from the payee thereof, R. H. Andrews.  At the time of such purchase, the plaintiff held the unsecured notes of the said George May for about $12,000.  Its purpose in purchasing the note from Andrews was that it might apply the margin of collateral upon its own indebtedness; and it seeks by this suit in equity to adjudicate its unsecured indebtedness as a lien upon this collateral, and to foreclose such lien, and to have special execution against the collateral.  The decree below recognized the lien of the plaintiff to the extent of the Andrews note, and denied it as to the other indebtedness.  The following is a reproduction of the Andrews note:

"Charles City, Iowa, *Nov. 25, 1916,*                    $5,000.00·
On or *before five years* after date, the undersigned promises to pay to

        R. H. Andrews
~~The Commercial National Bank~~  of Charles City, Iowa, or order at the office of the Commercial National Bank of

Charles City, Iowa, *five thousand & no-100* dollars with $\frac{6}{8}$ per cent interest at per annum payable semi-annually.

"Principal and interest shall draw interest at $\frac{6}{8}$ per cent per annum after due, payable semiannually, and if not paid when due, the whole shall become due and payable at once without further notice, at the option of the holder. If sued or placed in hands of an attorney for collection, a reasonable attorney's fee may be recovered. And I hereby expressly agree and consent, that in any suit brought on this note by the holder hereof, any justice of the peace, of the state of Iowa, before whom such suit may be brought, may have and exercise full and complete jurisdiction in the case to any amount not exceeding three hundred dollars. The makers and endorsers severally waive presentment for payment, protest and nonpayment of this note at maturity and all defenses on the ground of any extension of time of its payment that may be given by the holder to them or any of them.

"To secure payment of this note, and of any other liability or liabilities of the undersigned to the holder hereof, due or to become due, or that may be hereafter contracted or existing howsoever acquired by said holder, the undersigned has transferred, pledged and delivered to The Commercial National Bank of Charles City the following property, to wit:

"*Certificate No. 24 for fifty shares of stock Coml. Natl. of Charles City, Ia. and Certf. No. 28 for five shares stock Coml. Nat. Bank of Charles City, Iowa,* (the market value of which is today $11,000.00) and now agrees that upon breach of any of the promises herein contained or upon failure to pay any of said other liabilities when due said bank or the holder hereof may thereupon, or at any time or times thereafter, sell the said property or any part thereof, and any substitute therefor and any additions thereto,

at any brokers' board, or at public or private sale, without notice, advertisement or demand of any kind, and may apply the net proceeds, after deducting all costs and expenses for collection, sale, and delivery, to the payment of this note or any or all of said liabilities, returning the residue to the undersigned on demand.  Said bank or the holder hereof may purchase any of said property at any such brokers' board or public sale.  In case of decline in the market value of said property or any part thereof, the holder hereof may demand the pledge and delivery of additional property of quality and amount satisfactory to said holder; and the failure on the part of the undersigned to deliver such additional property on demand shall cause this note to become due and payable on demand.  In case of the insolvency of the undersigned, any indebtedness due from the holder hereof to the undersigned may be appropriated and applied hereon at any time, as well before as after the maturity hereof.

"Geo. E. May."

The plaintiff relies, for its right to lien, upon the provisions of the note pertaining to the collateral security, as set forth in the last paragraph thereof.  No shares of stock were ever deposited with the Commercial National Bank of Charles City, as recited in such paragraph.  However, a few days subsequent to the date of the note, the payee, Andrews, executed and delivered to May the following receipt:

"Charles City, Iowa, Dec. 2nd, 1916.

"Received of George E. May certificate Number 24, and certificate Number 28, for a total of 55 shares held as collateral for George E. May's note of $5,000.00, dated November 25th, 1916, and due five years from date.  R. H. Andrews."

Pursuant to this receipt, the shares in question were delivered by May to Andrews.

The controlling questions in the case are:

1. Looking alone to the provisions of the Andrews note, in the light of the circumstances surrounding the parties, can it be said that the deposit of collateral was intended to secure indebtedness other than that which might be held by Andrews? That is, was it intended that other future creditors of May might avail themselves of this collateral, as security for their claims, by the purchase of the Andrews note?

2. If yea, then, as between the parties to the Andrews note, can the receipt above set forth be considered as qualifying the printed provisions of the original note, and as restricting the use of the collateral as security for the Andrews note alone?

3. If yea, can the plaintiff avoid such effect of the receipt by showing that it was a purchaser in due course without notice of such receipt?

4. If yea, then, under the evidence, did the plaintiff have sufficient notice of the actual contract between the parties as to charge it with knowledge thereof?

The circumstances surrounding the parties in the making of the instrument and in the purchase thereof are few. May was the president of the plaintiff bank. He died insolvent, June 20, 1918. The indebtedness incurred by him to the plaintiff bank was so incurred while he was in active management, and some time subsequently to December 2, 1916, when the collateral was delivered to Andrews. The Andrews note was purchased by the plaintiff on June 14, 1918, after May had ceased to have active management of the bank. The Andrews note was drawn upon a blank form, in use in the plaintiff bank. This doubtless accounts for its discrepancies. The erasures made upon such blank form are indicated above. The italics indicated above represent the written portion of the note. The remainder thereof was a part of the printed blank. The note recited that its maker had "pledged and delivered to the Commer-

cial National Bank" certain shares of stock. This had not, in fact, been done. Assuming that this provision, though unperformed, implied an undertaking to so pledge and deliver, we have, then, to consider the effect of the receipt. According to its date, the receipt was subsequent in time to the execution of the note. It may have been contemporaneous with the delivery of the note, or it may have been a subsequent modification of the provisions of the note pertaining to collateral.

I.   Proceeding now to the questions above propounded, we have to say that question No. 1 has its difficulties. Because our conclusions upon the other questions become decisive, we pass this question. We may say in passing, however, that the direct authorities upon the question are very few, and in conflict. In support of the affirmative, the following authorities are relied on:

2. BILLS AND NOTES: collateral: right of holder in due course.

*Mulert v. National Bank of Tarentum,* 210 Fed. 857; *Richardson v. Winnisimmet Nat. Bank,* 189 Mass. 25 (75 N. E. 97); *Oleon v. Rosenbloom,* 247 Pa. 250 (93 Atl. 473). Only the last is strictly applicable to this case. For the negative, the following cases are relied on: *Gillet v. Bank of America,* 21 App. Div. 392 (55 N. E. 292); *Holston Nat. Bank v. Wood,* 125 Tenn. 6 (140 S. W. 31).

We may say, also, that this case does not involve any question of right of application of surplus proceeds of collateral properly sold by the holder in collection of the original note.

II.   As between the payor and payee, May and Andrews, the receipt was a part of the contract, the measure of right which Andrews took in the collateral, and likewise, that which May reserved therein. It is quite immaterial whether it be deemed contemporaneous with the delivery of the note or a subsequent modification of the note. If the former, its effect was the same

3. CONTRACTS: construction: inconsistent written and printed terms.

as though it had been written into the original note. True, · it contained a provision which was contradictory to the printed provisions of the note. The receipt being in writing, it became, under our statute, controlling, and such printed provisions therein became nugatory.

If the receipt be deemed a subsequent modification of the previous writing, its effect would be the same. It is urged by the appellant that the receipt is ineffective as a modification of the contract, for want of consideration. This position is not tenable, for several reasons:

**4. CONTRACTS: consideration: written contract: conclusive presumption.**

(1) The writing imported a consideration, and there is no evidence that there was no consideration.

(2) A mutual modification of a previous contract is ordinarily supported by the same consideration as that of the contract. A possible exception to this rule is when the modification operates necessarily to the exclusive benefit of one of the parties.

**5. CONTRACTS: consideration: acquisition of benefits.**

(3) The receipt, on its face, discloses a consideration moving to Andrews, the payee, in that he received thereby the possession of the collateral; whereas, under the first contract, the possession was to remain in the bank of which the payor was president. It discloses a consideration to May, in that the sweeping powers conferred upon the holder by the terms of the original contract were restricted, and the lien upon the collateral was limited to the particular note.

It is further urged by the appellant that the receipt is a mere recital of fact, and not a contract. It is true that the receipt is a recital of the fact of receipt. But it also states the extent of the right of the receiptor in the collateral received, and the purpose for which it is receipted. It is to be "held as collateral for George E. May's note of $5,000."

While this is the recital of a fact, it is also the written evidence of the contract thus recited.

It is clear, therefore, that, as between the parties, the receipt is controlling, so far as it goes, and that its legal effect was to supersede the contradictory provisions of the printed form.

III.    Do the rights of the plaintiff as to this collateral rise any higher than those of Andrews?  The plaintiff contends that it had no notice of the receipt, and that, therefore, as a holder in due course, it was in no manner bound thereby, but had a right to rely upon all the terms of the note as they appeared upon its face.  We will assume that the plaintiff *was* a holder in due course, and is entitled to the full benefit of the law of negotiable instruments.  If, then, there had been any contract between the original parties which would have given the payor the right of defense or offset to the note or to its security, such right would not be available to the payor, as against the plaintiff.  In such event, the rights of the plaintiff would rise higher than those of the payee.  If effect be given to this receipt as the contract between the original parties, does it operate to create or present a defense, either to the note or to its security?  The receipt does not in any manner impeach the note in the hands of the plaintiff nor its security.  Its right to collect the note in full and to appropriate the collateral to that end has been in no manner questioned by anyone.  Not only has no defense to note or security been encountered by the plaintiff, but the court has given it full affirmative adjudication in the decree appealed from.  The plaintiff is in court as a holder of notes amounting to about $17,000.  It is in court as a "holder in due course" only as to the $5,000 note purchased from Andrews.  As to the other notes, it is not in court as such holder.  Whatever its rights as to such other notes, the law of negotiable instruments is not involved.  Such statute comes to its aid only as a

holder in due course. In such case, equities and defenses are cut off. This being done, the function of the statute is done. The Negotiable Instruments Act, having operated to the protection of a holder in due course against defenses, will not follow him as an abiding friend into other transactions, nor will it build up for him affirmative equities as to such other transactions. As to the notes held by the plaintiff as payee, the question of negotiability is not involved. Its right, if any, to appropriate the Andrews collateral to the securing of such notes arises under the contract between May and Andrews. In the absence of facts constituting estoppel, we know of no rule that would confer upon the plaintiff, as to such matter, any greater right than Andrews had. If plaintiff had in due course acquired *these* notes from Andrews, then a very different question would be involved.

If we were in doubt at this point as to the law, we would still have to say that the evidence discloses sufficient notice to charge the plaintiff with knowledge of the real facts which could readily have been ascertained by inquiry. First of all, the note on its face described the stock which was to be given as security as having been "pledged and delivered to the Commercial National Bank." The note on its face did not contemplate that Andrews, as payee, should have personal possession of the stock or any right of disposal thereof, except through the trustee thus named. The possession and transfer of the stock by Andrews in person was an apparent violation of the terms of the very note which the plaintiff was purchasing. In that respect, also, the note was not regular on its face, and in such respect, the plaintiff would not be protected in its purchase, even though the question of negotiability were involved. The condition of the note, therefore, on its face was such as to put the plaintiff upon inquiry as to this collateral. Fur-

6. BILLS AND NOTES: notice of infirmity.

thermore, though the plaintiff purchased this note with its collateral, for the purpose of using the collateral as security for its own paper, it did not disclose that purpose to Andrews. Though the plaintiff's officers did not learn from Andrews that he had signed a receipt, yet he did tell them the facts as to his interest in the collateral. If they had seen the receipt, they would have learned no more than they learned orally from Andrews. He told them that he was holding the collateral for his $5,000 note. He claimed no greater right. It is true that the information was brief, and that there was little occasion for conversation on the subject. But if the purpose of the plaintiff in the purchase of the note had been disclosed to Andrews, it would have tended to emphasis on his part of the limitation under which he held the collateral. The receipt itself was not in the possession of Andrews, but in the possession of May. He was accessible, and inquiry from him would have disclosed the receipt itself. We reach the conclusion that the decree entered below should be—*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.