**JONES v. KINEO TRUST CO. et al.**
No. 27.

District Court, D. Maine, N. D.
Jan. 7, 1931.

Fellows & Fellows, of Bangor, Me., for plaintiff.

C. W. & H. M. Hayes, of Dover-Foxcroft, Me., for defendants.

HALE, District Judge.

Lawrence V. Jones, trustee in bankruptcy of Angus O. Campbell, brings this bill in equity against the Kineo Trust Company and the Piscataquis Savings Bank, banking corporations in Dover-Foxcroft, Me. The plaintiff alleges that Campbell on the 13th day of December, 1928, filed a voluntary petition in bankruptcy, and was thereafter duly adjudicated a bankrupt by the United States District Court for the District of Maine; that the plaintiff was thereafter duly appointed trustee in bankruptcy of the bankrupt; that prior to the filing of the petition and the adjudication, within four months thereof, and while Campbell was insolvent, namely, on or about the 6th day of December, 1928, the Piscataquis Savings Bank held a note against Campbell in the sum of $4,500, secured by bonds to the amount of the par value of $6,000, and that on December 6th the Kineo Trust Company had reasonable cause to believe that Campbell was insolvent and that a transfer of any of his property would operate as a preference, and that, having this knowledge, it secured the transfer from the Piscataquis Savings Bank of Campbell's note and the securities held by the savings bank; that this transfer was within the knowledge of Campbell; that the effect of the transfer by the savings bank to the trust company was to enable the trust company to obtain a greater percentage of its debt than any other creditor of the bankrupt of the same class with the trust company, and that the payment did so operate as a preference under the provisions of the Bankruptcy Act, and that the trust company received the transfer, knowing, or having reasonable cause to believe, that it was receiving a preference under the provisions of the Bankruptcy Act; that this transfer from the savings bank to the trust company, within four months of the filing of the petition in bankruptcy, was made with the intent and purpose of the savings bank and of the bankrupt to prefer the trust company over and above other creditors of the bankrupt of the same class, and thus to hinder, delay, and defraud the creditors of the bankrupt, and that it was fraudulent.

The bill alleges, further, that, since the transfer, the Kineo Trust Company proceeded to unlawfully sell and apply the surplus of the collateral held by the savings bank in reduction of another claim alleged to be due from Campbell to the trust company, and

that, although requested so to do by the trustee, the trust company failed and refused to give any accounting to the plaintiff of the amount so collected and applied by the trust company, and has failed, and still fails, to deliver to the plaintiff the assets which are of the estate of the bankrupt and should pass to the plaintiff as its trustee.

The plaintiff contends that the purchase of the note from the savings bank was with the connivance of Campbell, that Campbell made the savings bank his agent in making the transfer, and thus was guilty of procuring a transfer and of making a preference within the meaning of the Bankruptcy Law.

The trust company answers that the note given to the savings bank contained an authority to sell the collateral "without notice, either of public or private sale or otherwise, or at the option of the holder or holders, on the non-performance of this promise," that the trust company purchased the note before bankruptcy, without knowledge of the bankrupt's insolvency, without reasonable cause to believe that the bankrupt was insolvent, and that it bought the note and took the collateral over in the ordinary course of business, and applied the collateral and proceeds, not only to the payment of the purchased note, but to other obligations of Campbell held by the trust company and insufficiently secured, and that it did this without the knowledge of Campbell. The answer of the trust company further states that at the time of the insolvency Campbell was indebted to the trust company in the sum of about $9,000 on three notes which had been carried along by the bank for more than six years.

The proofs on the part of the plaintiff show that Freemen D. Dearth, attorney for the bankrupt, went from his home in Dexter to Dover-Foxcroft on December 5, 1928, and had an interview with Mr. Arnold, treasurer of the trust company; that he presented a check of the bankrupt for $500 for his counsel fees, and that, after consultation with the treasurer, the check was paid; that the treasurer of the trust company asked him whether bankruptcy was intended, and Dearth told him that the situation looked bad, and that he did not know whether he should file a petition or not. Mr. Dearth testifies that he then went into the savings bank and talked in much the same manner with Mr. Woodbury, the treasurer of that bank. A few days later he received a telephone from Mr. Arnold, the cashier of the trust company, and he then told Arnold substantially that the bankrupt's affairs looked bad; that on the

5th day of December, 1928, he wrote to the Kineo Trust Company, and received an answer written by Mr. Arnold, the treasurer, dated December 6, 1928, stating that he had purchased of the savings bank a note for $4,500, and the collateral which was worth about $6,000, and he added, "Angus had no objection to our doing this."

G. L. Arnold, the treasurer of the trust company, testified that Mr. Dearth came to see him on December 5, 1928, seeking for information about the affairs of Angus Campbell, and that he gave him the information so far as the Kineo Trust Company was concerned in regard to Campbell's affairs; that he told him that Campbell's checking account balance on that date was $1,899.35; that he showed him Campbell's account and gave him all the information he had; that on the afternoon of Mr. Dearth's visit the trustees of the Kineo Trust Company held a meeting and voted to buy the note of the Piscataquis Savings Bank for $4,500, signed by Campbell and secured by bonds having a face value of $6,000; that he had known that the savings bank had such a note for years; that the bank is in the same building with the trust company. He testified that Campbell, the bankrupt, was not consulted about the purchase of the note or the transfer of it, and did not participate in it, and was ignorant of it until a long time afterwards. Mr. Woodbury, the treasurer of the savings bank, testifies to the same effect. Mr. Campbell, the bankrupt, also testifies that he never knew anything about it or had any talk with Mr. Arnold about it, and no talk with anybody in behalf of the savings bank about it; that it was never mentioned to him by any official of either bank.

██ In order to sustain its contention, the plaintiff must show the bankrupt, while insolvent, within four months of bankruptcy, procured a transfer of his property, the effect of which transfer would be to enable one creditor to obtain a greater percentage of his debts than another creditor of the same class. The learned counsel for the plaintiff takes the ground that Campbell, the bankrupt, while insolvent, procured the transfer of the note in the savings bank, with its collateral, to the trust company, that the bankrupt made the savings bank his agent in making the transfer, and that such transfer was thus made with his connivance, and was therefore in defraud of creditors within the meaning of the Bankruptcy Act (11 USCA).

The burden of proof is upon the plaintiff. In order to prevail, he must sustain his

case by clear and convincing proofs. Upon a careful study of the record, I am compelled to find that the plaintiff has failed to meet the burden of proving its case by clear and convincing proofs. The proofs, taken as a whole, fall far short of sustaining the allegation of fraud within the meaning of the Bankruptcy Act. I think the testimony negatives fraud. Nothing appears to have been withheld from the plaintiff or from his attorney, either by the trust company or by the savings bank, or by the bankrupt himself. At the time the bankrupt's attorney had his interview with the treasurer of the trust company, the bankrupt had a general deposit in his checking account of a size to protect the trust company on its loans. The treasurer gave full information of this fact, and of all other facts within his knowledge, to the attorney, and obtained from the attorney what information he had concerning the affairs of the bankrupt. While the attorney told the treasurer that the bankrupt's circumstances were very bad, he gave the information further that he had not determined upon putting him into insolvency. The facts within the knowledge of the treasurer fell far short of convincing him that Campbell was at that time insolvent. The treasurer of the trust company did not apply the bankrupt's cash balance to the payment of his debt, although he clearly had a right to do so. In due course of business, the trust company trustees voted to purchase the note and the securities from the savings bank. I think the proofs show by a preponderance of evidence that they did this without the knowledge or connivance of the bankrupt. The treasurer wrote afterwards to the attorney for the bankrupt that Mr. Campbell had no objections to the transfer. If this letter were coupled with no further testimony, it would have weight in tending to show complicity of Campbell in the transaction; but, in view of the clear testimony of the bankrupt himself, together with the testimony of the treasurer of the savings bank and the treasurer of the trust company, I think it cannot be held sufficient to prove the complicity of Campbell. I carefully noted the appearance of these three witnesses. I cannot believe that they committed perjury. Mr. Arnold did not say in his letter that he had interviewed Campbell and that Campbell had stated that he had no objections. What he seems to have intended to say was that Campbell could have no objections. There is corroborating evidence tending to show that the trust company did not know of the insolvency of Campbell, for, if it had, it would clearly have protected itself by the obvious method of appropriating and setting off his general balance, which it did later. The note in question gave the holder full authority to sell the collateral without notice, either at public or private sale, or otherwise, at the option of the holder. I think the trustees of the trust company acted in the due course of business, and that they were simply adopting good banking practice in purchasing the note from the savings bank, with the securities, and that they were clearly within their rights in consideration of the language of the contract in question.

 I think the cases make it clear that a bank has a lien on the securities which it holds for the amount of the debtor's general balance, and that a debtor can lawfully sell to a creditor a note containing such agreement as the note in question contains, regardless of the rights of the creditor to make a set-off or counterclaim. Such notes as the note before us are construed by the courts strictly and against the maker. In Richardson v. Winnisimmet National Bank, 189 Mass. 25, 32, 33, 75 N. E. 97, the court of Massachusetts had before it the construction of a contract quite like that in the case at bar. The court held that, in the absence of fraud, the note showed the intention of the parties that the right to enforce payment should pass upon the order of the payee; that the person thus designated became the holder, with the power to sell the securities in accordance with the terms of the note, with the right to apply the surplus to the payment of any note held by it against the maker of the note in question. In that case no fraud was charged. In the instant case, while fraud is charged, I have found that no fraud has been proven. Mulert v. Bank (C. C. A.) 210 F. 857; In re Searles (D. C.) 200 F. 893; Foster v. Abrahams, 74 Cal. App. 521, 241 P. 274.

The trustee in bankruptcy took over the bankrupt estate with all its rights and liabilities. I think he acted with a proper sense of his duty in bringing the facts of this case to the attention of the court. While I have decided the case contrary to his contentions, I think the bankrupt estate should not be decreed to pay costs.

A decree may be presented dismissing the bill, but without costs.