## MULERT v. NATIONAL BANK OF TARENTUM.

(Circuit Court of Appeals, Third Circuit.    July 23, 1913.)

### No. 1735.

PLEDGES (§ 19*)—DEBTS OR LIABILITIES SECURED—"HOLDER."

A promissory demand note, payable at the Bank of P. to the order of the maker, indorsed by him and delivered to such bank, recited the deposit of certain collateral security for payment of it, or any other liability of the maker to the holder thereof then due, or to become due or thereafter contracted, with full power to the holder to sell, sign, and deliver such security at public or private sale on the nonperformance of the promise to pay or the nonpayment of any of such liabilities, and to apply the residue, after deducting expenses, to pay all of such liabilities as the holder should deem proper, returning the overplus to the maker. *Held,* that the maker must have meant to give to the word "holder" its well-understood, broad, inclusive, legal meaning, as the one in actual or constructive possession of the note and entitled to recover or receive payment, and not to restrict its meaning to the Bank of P.; and hence, where that bank sold the note and delivered the collateral to the transferee, such transferee could hold the collateral as security for notes held by it on which the maker was liable, though never owned by the Bank of P.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 58–63; Dec. Dig. § 19.*]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit by Justus Mulert, trustee in bankruptcy of M. K. Salsbury, against the National Bank of Tarentum. From a judgment for defendant, the petitioner appeals. Appeal dismissed.

Alvin A. Morris, of Pittsburgh, Pa. (Morris, Walker & Allen, of Pittsburgh, Pa., of counsel), for appellant.

J. Merrill Wright and Albert Schultz, both of Pittsburgh, Pa. (McKelvy & Wright, of Pittsburgh, Pa., of counsel), for appellee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. This case involves a dispute between the National Bank of Tarentum, Pa., and Justus Mulert, trustee in bankruptcy of M. K. Salsbury, as to the ownership of some $3,600 now held by the bank, subject to the order of the court below. The referee, and the court on his certificate, awarded the money to the bank. Thereupon the trustee took this appeal.

Restricting ourselves to a statement of the facts pertinent to the question before us, we note that on November 30, 1904, Salsbury executed a negotiable demand note payable to his own order, indorsed the same in blank, and in consideration of $17,000 delivered it, together with certain collateral, to the Bank of Pittsburgh. The note was in form following:

"17,000.:                                        Pittsburgh, Pa., Nov. 30, 1904.

"On demand, after date, for value received, I promise to pay to the order of ——— myself ——— with interest ——— seventeen thousand ——— dollars, having deposited herewith as collateral security for payment of this or any other liability or liabilities of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted, the following property, viz. :
175 shares Midland Coal Co.
  50    "     U. S. Steel Corp. Pfd. delivered 11/17/08,
with the further right to call for additional security and on failure to respond this obligation shall be deemed to be due and payable without demand or notice, with full power and authority to the holder hereof to sell and assign and deliver the whole of the above-mentioned security, or any part thereof, or any substitute thereof, or any additions thereto or any other property at any time given unto or left in possession of the holder hereof, at any broker's board, or at public or private sale, at the option of the holder hereof, on the nonperformance of this promise, or the nonpayment of any of the liabilities above mentioned, at any time or times hereafter, without demand, advertisement or notice, and with the right to purchase as any other bidder at any public sale thereof held by virtue hereof. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales, so to be made, to pay any, either or all of said above-mentioned liabilities, as the holder hereof shall deem proper, returning the overplus to the undersigned.
                                        "[Signed] M. K. Salsbury.
"Payable at
      "The Bank of Pittsburgh, N. A."
Indorsed: "M. K. Salsbury."

He subsequently paid the interest thereon, part of the principal, and lifted the steel stock. In the meantime he became liable to the bank on another note, for the security of which his collateral concededly stood, the total of his indebtedness being, on August 6, 1909, some $10,600, with collateral worth over $15,000. On August 6, 1909, the Bank of Pittsburgh sold the said two notes to the Third National Bank for the amount unpaid thereon, and delivered therewith Salsbury's collateral. Three days thereafter the Third National Bank bought from the National Bank of Tarentum a note for $2,800, and from the First National Bank of Natrona another for $4,300, on both of which Salsbury was liable as indorser. At the time of these purchases the latter banks agreed to repurchase the notes on request of the Third Na-

tional.   Pursuant to request, such repurchase was subsequently made by the Tarentum Bank, and as part of the same transaction it also bought from the Third National the Salsbury notes, and therewith the collateral the latter bank had received from the Bank of Pittsburgh.   Thereafter Salsbury having been adjudged bankrupt, and the collateral having been sold by the National Bank of Tarentum by order of court, there was applied, by consent, after cost of sale, $11,-192.53, to the payment of the purchased original indebtedness of Salsbury to the Bank of Pittsburgh.   The balance of $3,657.47 the National Bank of Tarentum claimed, as the holder of the original note, to apply to the two Natrona and Tarentum notes owned by it, and on which it alleged Salsbury's collateral was liable, by virtue of the agreement of Salsbury in his original note that his stock was—

"deposited herewith as collateral security for payment of this or any other liability or liabilities of the undersigned to the holder hereof, now due or to become due, or that may be hereafter contracted."

On the other hand, it was contended by Salsbury's trustee that the only liabilities secured by the collateral were those of Salsbury to the Bank of Pittsburgh, the original holder of the note.   This question, be it observed, is the only one here involved and decided.

The case turns on the meaning and scope of the word "holder."   In ascertaining that meaning, we must bear in mind that the instrument in which it is here used is a promissory, demand note, negotiable in form, payable to the order of the maker, who has conferred negotiability upon it by an unconditional indorsement.   Such indorsement imparted to the note the possibility of passage by delivery and of ownership without assignment.   Possession, the mere holding of such a note, without assignment, created title and ownership, and conferred on such holder the legal capacity to bring suit and enforce payment. Indeed, the possession or holding, the sanctity of the holding, and the integrity and incontestability of such held paper, constitute the foundations on which the whole superstructure of negotiable paper, and the legal principles applicable thereto, stand.   When applied to negotiable paper, the word "holder" has a recognized meaning.   Thus in Bowling v. Harrison, 47 U. S. (6 How.) 248, 12 L. Ed. 425, it is said:

"The term 'holder' is properly applied to the person having possession of the paper."

In Crocker-Woolworth Bank v. Nevada Bank, 139 Cal. 564, 73 Pac. 456, 63 L. R. A. 245, 96 Am. St. Rep. 169,

"The term 'holder' is properly applied to the person having possession of the paper and making the demand, whether in his own right or as an agent for another. * * * 'Holder' is a word of the same import as 'bearer.' * * * 'Holder' is a general word applied to any one in actual or constructive possession of the bill, and entitled at law to recover or receive its contents from the parties to it."

So in Rice v. Hogan, 38 Ky. (8 Dana) 133:

"The 'holder' of a bill is he who is in possession of the bill, and is legally entitled to the benefit of it."

And Baring v. Lyman, 1 Story, 396, Fed. Cas. No. 983:

"A bill is properly said to be negotiated, when it has passed into the hands of the payee, or indorsee, or other holder for value, who thereby acquires a title thereto."

In National Exchange Bank v. Wiley, 195 U. S. 257, 25 Sup. Ct. 70, 49 L. Ed. 184, the Supreme Court quotes with approval Byles on Bills, that:

"Holder is a general word, applied to any one in actual or constructive possession of the bill, and entitled at law to recover or receive its contents from the parties to it."

Recognizing, therefore, as Salsbury must be held to have recognized, the legal principles applicable to the creation, currency, and ownership of negotiable paper, and invoking, as he did, the application of such principles by indorsing and negotiating a negotiable note payable to his own order, and thus conferring upon it the possibility of others holding it, it would seem that by the use of the words "the holder hereof," "liability or liabilities of the undersigned to the holder hereof," "with full power and authority to the holder hereof to sell and assign and deliver the whole of the above-mentioned security," and "to apply the residue of the proceeds of such sale or sales, so to be made, to pay any, either or all of said above-mentioned liabilities, as the holder hereof may deem proper, returning the overplus to the undersigned," he meant to give to the word "holder" in this note its well-understood, broad, inclusive, legal meaning, and to enhance the negotiability of his paper by conferring on every subsequent purchaser thereof all the advantages enjoyed by holders of such paper. There is nothing in the note itself to evidence an intent on his part to restrict the word "holder" to the Bank of Pittsburgh, and to so restrict it we must make it read "the holder, to wit, the Bank of Pittsburgh." This, we think, would be to write into the note a change for which we have no warrant. The mere fact that the note is made payable at that bank serves no more to limit the word "holder" than it would have broadened it if the note was made payable at some other bank.

After mature consideration, we are of opinion the court below committed no error, and the appeal should be dismissed.