**GEORGE D. HARTER BANK OF CANTON, OHIO, v. INGLIS (and four other cases).**

(Circuit Court of Appeals, Sixth Circuit. July 3, 1925.)

Nos. 4295–4299.

1. **Courts 325—Defendant, by failing to object to form of proceeding, waived right of court to proceed.**

Where insolvent state bank was placed under receivership by order of district court, although claimants to fund drawn into court by petition of receiver were residents of state, and no claim was for as much as $3,000, by failing to object to form of proceeding, defendant waived right of court to proceed, and final adjudication that receiver had no interest in fund did not affect jurisdiction theretofore rightfully attached.

2. **Banks and banking 134(1) — Ordinarily bank may set off against deposit debt due by depositor.**

Ordinarily a bank may set off a deposit against a debt due it from the depositor, right thereto not, however, being absolute or paramount to superior equities.

3. **Banks and banking 134(2) — Equity has extended right of bank to set off deposit against debt on theory that one should not pay debt to creditor if he cannot compel creditor to pay.**

Where insolvency has intervened, equity has extended right of bank to set off deposit against debt of depositor to unmatured note, on theory that in good conscience one ought not pay debt to creditor if he cannot ultimately compel creditor to pay debt due him; right, however, not being paramount to superior equities.

4. **Banks and banking 134(7)—Equities of claimants to deposit of insolvent bank held superior to right of set-off of bank.**

Where company engaged in general banking business was placed under receivership, and bank, after learning thereof, applied its deposit in payment of unmatured note, equities of claimants to deposit as proceeds of sale of shares of stock and funds intrusted to insolvent bank, which were traceable to deposit, *held*, superior to right of set-off in the bank.

5. **Banks and banking 134(1)—Collateral held inapplicable to pre-existing debt of another bank which absorbed creditor bank.**

Where collateral was deposited by debtor with C. bank to secure payment of debt or any of debtor's liabilities to C. bank, due or to become due, or that may thereafter be contracted, after existing debt was paid, collateral cannot be applied to payment of a pre-existing and unmatured obligation to H. bank, which absorbed C. Bank.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

In the matter of the Geiger-Jones Company, in receivership. Petition by Richard Inglis, receiver, against the George D. Harter Bank of Canton, Ohio, to turn money over to him, in which Mary P. Charles, Howard L. Domigan, J. E. Brate, and Mrs. F. U. Le May intervened. Judgment that the bank's claim was paramount to that of the receiver but that the claim of interveners was superior to that of the bank, from which the bank appeals. Affirmed.

There are five of these cases. In four of them, involving the same questions, the George D. Harter Bank of Canton, Ohio, a state institution, is plaintiff in error and Mary P. Charles, Howard L. Domigan, J. E. Brate, and Mrs. F. U. Le May, the defendants in error; the other is a controversy between the bank and the receiver of the Geiger-Jones Company.

The Geiger-Jones Company was engaged in a general banking business in Canton, Ohio. It became insolvent and was placed under a receivership by order of the District Court December 9, 1921. It was then indebted to the George D. Harter Bank in the sum of $29,000, as evidenced by a renewal note of October 21, 1921, due January 21, 1922; and it had on deposit in the bank $11,393.68. The bank on December 12th, after learning of the receivership, applied this sum to the unmatured note of October 21st. The receiver for the Geiger-Jones Company filed a petition for a rule to require the bank to turn the money over to him. Charles, Domigan, Brate, and Le May intervened, claiming the several sums set forth in their respective petitions. The bank filed responses to the claims of the receiver and interveners, and upon trial it was held by the District Court that as between the receiver and the bank the latter's claim was paramount, but that the equities of the interveners in the respective sums claimed by them were superior to those of the bank.

Charles' claim was for the value of 5 shares of stock sold by the Geiger-Jones Company for her, and the proceeds deposited in the bank on December 8th. The claim of Domigan was for a sum that he had paid to the Geiger-Jones Company for certain stocks that he never received, which sum was

deposited in the bank on December 9th. Brate's claim was for the value of 30 shares of stock owned by him but sold by the Geiger-Jones Company. The proceeds of the sale were deposited in the bank November 10th, but the stock was not transferred until December 5th, and on that date the Geiger-Jones Company issued its check to Brate for the sale price, which was presented to the bank on December 12th and payment refused. The claim of Le May was for 5 shares of stock belonging to her but sold by Geiger-Jones Company on December 6th, and the price thereof deposited in the bank on December 7th. The evidence, we think, certainly shows that three of these claims were for funds constituting a part of the deposit applied on the note of $29,000; the other was represented by a check for a fund that had previously gone into the deposit as a result of the sale of claimant's stock.

The pertinent facts on the issue between the receiver and the bank are: On October 21, 1921, the Geiger-Jones Company executed its note to the City National Bank of Canton, Ohio, for $28,400, payable 3 months after date, and deposited with the bank certain stocks under an agreement containing the provision: "Having deposited with said company as collateral security, for payment of this or any other liability or liabilities of ours to said company, due or to become due, or that may be hereafter contracted, the following property, viz." In March, 1922, the City National Bank and the George D. Harter Bank consolidated under the name of the George D. Harter Bank. That bank on May 5, 1922, sold enough of the securities to pay the note given to the City National Bank, with the exception of $1,260.35. On the same day the receiver tendered to the bank that sum and demanded the surrender of the remaining securities. The demand was refused, the bank claiming the right to sell the securities and apply them to the balance due on the renewal note of $29,000 taken by it prior to the consolidation.

C. M. Horn, of Cleveland, Ohio, and Homer E. Black, of Canton, Ohio (Herbruck, Black, McCuskey & Ruff, of Canton, Ohio, and Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, on the brief), for appellant.

Luther Day, of Cleveland, Ohio (Day & Day, of Cleveland, Ohio, and Rufus S. Day, of Washington, D. C., on the brief), for receiver.

Wendell Lilly, of Columbus, Ohio (Lemuel D. Lilly, of Columbus, Ohio, and Tolles, Hogsett, Ginn & Morley and J. C. Little, all of Cleveland, Ohio, on the brief), for appellees who were intervening claimants in the court below.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge (after stating the facts as above). [1] In the first four cases there is presented primarily the question of the jurisdiction of the District Court to determine the controversy between the bank and the intervening claimants. Each of the claimants was a resident of the state of Ohio, the bank was a state institution, and no one of the claims was for as much as $3,000. The jurisdictional question was not raised in the lower court. The fund was drawn into court by petition of the receiver, and the intervening claimants filed their respective petitions claiming a part of it. The bank, without demurring to the jurisdiction, responded to their claims as well as to that of the receiver.

Whether the District Court in a summary proceeding could draw to its jurisdiction the controversy between the receiver and the bank is not argued. By failing to object to the form of the proceeding the bank waived any question as to the right of the court so to proceed. The final adjudication that the receiver had no interest in the fund did not affect the jurisdiction that had theretofore rightfully attached. City Railway Co. v. Citizens' Street Railroad Co., 166 U. S. 557, 17 S. Ct. 653, 41 L. Ed. 1114; Mullen v. Torrance, 9 Wheat. 537, 6 L. Ed. 154. As between the receiver and the bank, the ancillary jurisdiction was complete under the powers of the court to administer the estate. Wilson v. Power & Light Co. (D. C.) 300 F. 185, and authorities cited. A complement of that was the authority to determine the rights of all claimants to the fund. The case is not like Fulton National Bank v. Hoosier, 45 S. Ct. 261, 69 L. Ed. ——, reported in advance sheets April 1, 1925, page 261. In that case the proceeding was not initiated by the receiver but by Hoosier, who brought the bank into court, seeking to compel the receivers to litigate with it "for his sole interest and without possibility of benefit to the estate." The proceeding as thus initiated was in no sense ancillary to any right claimed by the receivers or to the power of the court to administer the estate.

[2, 3] There is no controversy as to the facts. It was stipulated that the bank had

neither actual nor constructive knowledge of any latent equities in favor of the interveners. The bank claims the right of set-off on the ground that its relation with the Geiger-Jones Company was that of debtor and creditor. Ordinarily a bank may set off a deposit against a debt due it from the depositor. Where insolvency has intervened, equity has extended the right to an unmatured note, upon the theory that in good conscience one ought not to be required to pay a debt to his creditor if he cannot ultimately compel the creditor to pay a debt due him. Laclede Bank v. Schuler, 120 U. S. 506, 7 S. Ct. 644, 30 L. Ed. 704. In neither case, however, is the right absolute or paramount to the superior equities of other claimants. In Bank of Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115, 6 How. 212, 12 L. Ed. 409, the Supreme Court held that, unless the creditor bank had extended credit on the faith of an account current between it and another bank, and thus acquired equities not arising from the mere relationship of debtor and creditor, it could not apply the proceeds of notes received by it for collection and apparently belonging to the debtor bank to a debt presently due and defeat the claims of the equitable owners. Cited with approval in Wilson v. Smith, 3 How. 763, 11 L. Ed. 820, and United States v. State Nat. Bank, 96 U. S. 30, 24 L. Ed. 647.

These decisions are said to have been overruled in Central National Bank v. Connecticut Mutual Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Union Stock Yards Bank v. Gillespie, 137 U. S. 417, 11 S. Ct. 118, 34 L. Ed. 724, and United States v. Butterworth, 45 S. Ct. 388, 69 L. Ed. ——, March 2, 1925. In each of those cases the bank had actual or constructive notice that the money deposited with it, and absorbed in part satisfaction of the depositor's debt, belonged to some one other than the depositor, and it was held that the equitable owner could follow the fund into the hands of the bank and recover it. In the Mutual Life Insurance Co. Case the court said: "Evidently the bank has no better right than Dillon, unless it can obtain it through its banker's lien. Ordinarily that attaches in favor of the bank upon the securities and moneys of the customer deposited in the usual course of business, for advances which are supposed to be made upon their credit. It attaches to such securities and funds, not only against the depositor, but against the unknown equities of all others in interest, unless modified or waived by some agreement, express or im-

plied, or by conduct inconsistent with its assertion. But it cannot be permitted to prevail against the equity of the beneficial owner, of which the bank has notice, either actual or constructive."

It will be observed that in speaking of the banker's lien that prevails against "unknown equities" the court refers to it as attaching to securities and money deposited in the usual course of business "for advances which are supposed to be made upon their credit." That is not this case. In none of the Supreme Court decisions relied on by the bank did the question arise as to the applicable law in the absence of notice, or as to the rights of the bank as between it and the equitable owner where the credit was not extended on the faith of the deposit. We cannot hold that the denial of the right of set-off as against the real owner, where the bank had notice of his equity, is the equivalent of holding that, in the absence of notice, the right is absolute, for, as pointed out in the case just referred to, although the balance due on a depositing account is only a debt, "the question is always open to whom in equity does it beneficially belong."

[4] The loan to the Geiger-Jones Company was not made upon the credit of its deposit. The bank applied the deposit to a debt that was not due. Its rights were purely equitable, and were subject to superior equities in favor of the beneficial owners. The claims of the interveners were for funds impressed with a trust in their favor. Those funds had been transferred to the Geiger-Jones Company and deposited by it with the bank. The bank had not granted or extended credit or in any respect changed its position because of the deposit. The equitable rights of the interveners were in our opinion superior to the right of set-off in the bank.

[5] The controversy between the bank and the receiver presents the question as to whether collateral deposited by a debtor with a bank to secure the payment of a debt "or any other liability or liabilities of ours to said company, due or to become due, or that may be hereafter contracted" may, after the existing debt is paid, be applied to the payment of a pre-existing obligation to another bank which has absorbed the bank with which the collateral was deposited. Counsel for the bank rely on Mulert v. National Bank of Tarentum, 210 F. 857, 127 C. C. A. 419; Richardson v. Winnisimmet, 189 Mass. 25, 75 N. E. 97; Oleon v. Rosenbloom, 247 Pa. 250, 93 A. 473, L. R. A. 1915F, 968, 1 Ann. Cas. 1916B, 233. None

of them is in point. They deal with contracts of pledge subjecting the collateral, not merely to debts due the original pledgee, but to all debts and liabilities due any holder of the note, and authorizing any such holder to sell the collateral and apply the proceeds in payment of any debt then due or to become due, or that might thereafter be contracted in favor of any holder of the note. The contract of pledge in the instant case limited the subjection of the collateral to debts due or to become due or that thereafter might be contracted in favor of the original pledgee. The liability to which the Harter Bank is attempting to subject the collateral is not and was never due the City National Bank to which the pledge by its terms was limited. The taking over of that bank did not effect an extension of the pledge to an account which the Harter Bank had prior to that time. Gillett v. Bank of America, 160 N. Y. 549, 55 N. E. 292.

The judgments in all cases are affirmed.