**334**

## In re HAYNSWORTH et al.*

District Court, E. D. South Carolina. May 22, 1928.

On Rehearing June 15, 1928.

Geo. H. Edwards, of Darlington, S. C., and L. D. Lide, of Marion, S. C., for petition- er Jones.

R. W. Sharkey, of Florence, S. C., for trustee.

Sam. J. Royall, of Florence, S. C., for bankrupts.

ERNEST F. COCHRAN, District Judge. The referee made an order (dated July 2, 1927) providing for the sale of certain shares of stock of the bankrupts in the Carolina Building Material Company, the same to be

*Affirmed in part and reversed in part and remanded by Circuit Court of Appeals, 34 F.(2d) 344.

sold in a block with other shares in the same corporation held by another bankrupt estate, to wit, the bankrupt estate of J. M. Lawton Company and J. M. Lawton. T. W. Jones filed a petition to review this order, and at the hearing it appeared to the court that a decision of the question might turn on what indebtedness against the bankrupts Haynsworth & Stuckey was owned by Mr. Jones, and the decision upon this petition to review was reserved until the referee could hear the question as to the indebtedness claimed by him. Later the referee filed another order (dated April 11, 1928) finding in favor of Mr. Jones on his claims, and also setting aside as preferential an assignment made by the bankrupts of their equity in this stock to the Commercial & Savings Bank, and the trustee and the bank have filed petitions to review this order.

I have read over the testimony and all of the evidence and record in the cause. The ·case is very voluminous and the facts are somewhat complicated. It will not be necessary to set forth all of the facts in detail. At the outset it may be stated that it was practically conceded by all parties at the hearing that the real contest here involved the control of the majority of the stock of the Carolina Building Material Company. With the control of this corporation this court has nothing whatever to do. But the parties have the right to have all of the proceedings in the bankruptcy court conducted according to legal and equitable principles, and this court, in considering and determining the questions presented, will decide all of the issues according to the legal and equitable rights of the parties, and can take no concern whether its conclusions, when rightfully reached, result in one or the other party's attaining the control of that corporation.

It appears from the record that T. B. Haynsworth and J. M. Lawton, both now bankrupts, before their bankruptcy owned a controlling number of shares, viz. 275 shares, in the Carolina Building Material Company. T. B. Haynsworth and J. M. Lawton, before their bankruptcy, had at first a verbal agreement, and later a written agreement, not to sell or in any way dispose of any of the capital stock of the Carolina Company individually, but that their entire holdings should be sold or disposed of by them simultaneously. Later the partnership of Haynsworth & Stuckey was formed, and apparently took over the business of Haynsworth & Lawton. Haynsworth & Stuckey executed to Mrs. E. B. Douglas a certain collateral note, in which was pledged 95 shares of this Carolina Company stock. T. W. Jones was an indorser upon this Douglas note.

Before the bankruptcy of any of the parties, and before the note was due, Mrs. Douglas either required Mr. Jones to take it up, or he did in fact take it up of his own motion (it being immaterial which is the fact), and she thereupon assigned that note and the collateral to him. Of the 95 shares pledged in the Douglas note, 20 shares belonged to the firm of Haynsworth & Stuckey, and 75 to T. B. Haynsworth. The other indebtedness claimed by T. W. Jones is a note, dated January 29, 1921, for $1,000, executed to him by J. M. Lawton and T. B. Haynsworth individually, and not as copartners; a note, dated July 22, 1921, for $3,000, executed to him by Haynsworth & Lawton as a copartnership, indorsed by J. M. Lawton and T. B. Haynsworth, individually; and a third note, dated August 1, 1921, for $1,500, executed to him by Haynsworth & Lawton as a partnership, but not indorsed—making a total of $5,500. These notes will hereafter for convenience be referred to as the Haynsworth & Lawton notes.

After these transactions, the partnership of Haynsworth & Stuckey and the individuals, T. B. Haynsworth and M. C. Stuckey, were adjudicated bankrupts in a single proceeding. J. M. Lawton Company, the corporation, was adjudicated bankrupt in a separate proceeding, and J. M. Lawton individually was adjudicated a bankrupt in a third separate proceeding. The order of sale proposes that the trustee of the various bankrupt estates mentioned shall sell all of the Carolina stock belonging to those estates in a block at the price of $105 per share. Mr. Jones objects to this, on the ground that these shares cannot be sold in a block, but, being separate estates, should be sold separately, and, in addition to that, he urges that he has a right to have the 95 shares put up for the Douglas note sold as a separate block, and applied first to the Douglas note held by him, and then to the other obligations held by him, viz. the three Haynsworth & Lawton notes, which he says were assumed by the firm of Haynsworth & Stuckey.

Other pertinent facts will be adverted to later in the course of this opinion. It will be advisable to consider first the petition to review the referee's order dated April 11, 1928, in reference to the indebtedness which Mr. Jones claims against the bankrupt estate of Haynsworth & Stuckey, for the decision upon the other petition to review will depend upon what decision is reached upon this one.

█ The first question to be considered under this petition to review the referee's order as to the indebtedness of the bankrupt estate of Haynsworth & Stuckey to Mr. Jones is: What rights are given to the holder of the Douglas note? In considering this question, I shall assume that the three notes for $5,500 now held by Mr. Jones were duly assumed by the partnership of Haynsworth & Stuckey. There is no question made but that the Douglas note must be paid in full from the proceeds of the 95 shares pledged in that note. Assuming, then, that the three Haynsworth & Lawton notes held by Mr. Jones are a part of the indebtedness of the partnership of Haynsworth & Stuckey, does the Douglas note give him a right to collect those three notes out of the collateral in addition to the Douglas note? The Douglas note states explicitly that the collateral is deposited with the "payee" for the payment of "this note and all other demands, present or future, of the undersigned to the payee." It further provides that the undersigned does hereby give unto the "payee, its successors or assigns, or the holder thereof," a first and specific lien for all of the "said demands" "upon any of the above-mentioned property," and so forth. It is clear from the language of this note that, as long as it remained in the hands of Mrs. Douglas, the proceeds of the collateral should be applied first to that note, and then to any other demands that Mrs. Douglas might hold against Haynsworth & Stuckey. These were the demands that were naturally in the contemplation of the parties when the note was executed.

Now, did the parties contemplate the payment, not only of demands of that sort, but demands of any future holder of the note? I think not. The demands that can be, so to speak, tacked to the original note, must be those that are described in the note, namely, demands of the "payee" (that is, of Mrs. Douglas), and not of any third party. Here these additional demands of the three Haynsworth & Lawton notes now claimed by Mr. Jones were never payable to Mrs. Douglas, nor did she ever own them. When she assigned the note to Mr. Jones, she assigned to him, of course, all of her rights therein, and no more. She therefore assigned to him the right to collect the principal of the note itself, and any demands she might have then had against the parties and assigned to Mr. Jones. But she could have no right to assign to Mr. Jones the right to tack or add to the note any independent demands which he may have had, and which she had never owned.

The learned attorney for Mr. Jones relies upon the cases of Mulert v. National Bank, 210 F. 857, 127 C. C. A. 419, Richardson v. Winnisimmet, 189 Mass. 25, 75 N. E. 97, and Oleon v. Rosenbloom, 247 Pa. 250, 93 A. 473, L. R. A. 1915F, 968, 1 Ann. Cas. 1916B, 233. None of these is in point. They deal with contracts of pledge subjecting the collateral, not merely to debts due the original pledgee, but to all debts and liabilities due any "holder" of the note, and authorizing any such holder to sell the collateral and apply the proceeds in payment of any debt then due or to become due, or that might thereafter be contracted in favor of another holder of the note. The contract of pledge in the present case limits the subjection of the collateral to debts due or to become due, or that might thereafter be contracted, in favor of the original pledgee—that is, the payee, Mrs. Douglas; and the liability to which Mr. Jones is attempting to subject the collateral is not and was never due Mrs. Douglas, to which the pledge by its terms was limited.

This very question was decided by the Circuit Court of Appeals of the Sixth Circuit, in an able opinion by Circuit Judge Moorman, in the case of Harter Bank v. Inglis, 6 F.(2d) 841, and with the views therein expressed I am in full accord. Compare Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292.

█ But there is another reason why these additional claims of Mr. Jones cannot be paid from the proceeds of this collateral. Assuming again that Haynsworth & Stuckey duly assumed the payment of these Haynsworth & Lawton notes to Mr. Jones, there is no evidence whatever that Mr. Jones assented to this assumption, and agreed to discharge the original makers as such. In other words, there was no novation of the contracts, and for aught that appears the original makers and indorsers of these several notes are still liable to Mr. Jones for their payment. If they are still liable, and Haynsworth & Stuckey are also liable, these notes are not obligations for which the collateral in the Douglas note is liable. The collateral in the Douglas note cannot be made liable for any demands, except demands against Haynsworth & Stuckey. It does not cover demands against Haynsworth & Stuckey jointly with other persons. J. M. Lawton is not a member of the firm of Haynsworth & Stuckey, but he is liable on all the Haynsworth & Lawton notes. It has been held, where a joint note was executed, pledging stock owned jointly as collateral security or for any other liabilities of the undersigned to the holder, now due or to become due, or that might

thereafter be contracted, that, since the note created a joint liability, the other liabilities for which the collateral was pledged should be construed also to be those incurred by the holders jointly, and hence the collateral was not available in settlement of the several obligations of the bankrupts, assumed by them as indorsers of the notes of other corporations. Torrance v. Third National Bank of Pittsburgh (C. C. A. 3d) 210 F. 806.

It has also been held that, where two members of a firm executed a note pledging collateral for their obligation, or any of their obligations, the collateral could not be used in discharging a note signed by all three members of the firm, and that, where collateral is pledged to secure a firm obligation, such collateral cannot be used in. paying a note signed by the members of the firm as their joint individual obligation. In re Evans (D. C.) 235 F. 635. A fortiori, other liabilities of the makers of the note jointly with other parties, who are not makers of the original collateral note, are outside of the operation of the collateral note.

But there is a third reason why these three notes cannot be collected from the collateral pledged in the Douglas note. I have assumed so far that Haynsworth & Stuckey assumed payment of those notes. But there is no distinct finding by the referee that they assumed them, and the evidence upon that point is very confusing. Mr. J. M. Lawton testified at first that Haynsworth & Stuckey assumed all the liabilities of Haynsworth & Lawton; but later, when questioned about these three notes specifically, and his attention called particularly to dates and amounts, he testified positively that *he* assumed the responsibility of those particular notes. The testimony of Mr. T. B. Haynsworth is very confused and to some extent contradictory. When his attention was specifically directed to two of these notes by dates and amounts, he said that he could not swear positively to anything about them. Later he said that all of Haynsworth's and Lawton's debts were assumed by Haynsworth & Stuckey "in a way"; but his explanation of what he meant by "in a way" was far from clear. Later, in referring to the $3,000 note, he states that it was taken in consideration in the dissolution of Haynsworth & Lawton, but that Lawton assumed it "with us." Still later in his testimony, when his attention was specifically directed to the three notes by dates and amounts, he testified positively that they were not assumed by the firm of Haynsworth & Stuckey, but were assumed by J. M. Lawton. Still later in his testimony, he said that these three notes were assumed by the firm of Haynsworth & Stuckey in case J. M. Lawton did not pay them, and that they were likewise assumed by and were the debts of the individuals (viz. Haynsworth and Stuckey), if Lawton failed to pay them. Mr. Stuckey in his testimony said that "$5,500 of notes" *was* assumed by him, and that Lawton was given credit on the books of Haynsworth & Stuckey for that amount.

It is difficult to see why Lawton should be given credit, if Haynsworth & Stuckey assumed the notes. There was no suggestion made that any of these gentlemen were telling anything except what they believed to be the fact. From the reading of the testimony, the impression made upon the mind of the court is that they conducted their business, as it turns out so frequently when bankruptcy unfortunately supervenes, in rather a negligent manner, trusting entirely to one 'another, and that they really do not know themselves exactly what was done. It is true that in the schedules of Haynsworth & Stuckey these notes are listed as obligations of Haynsworth & Stuckey, and the statement made that they were assumed by the firm. But this ex parte statement, without right of cross-examination, is not binding on the trustee or the other creditors. So many notes were referred to in the testimony, and the testimony is so vague, that it is impossible for this court to reach the conclusion that there is a preponderance of the evidence to show that they were ever duly assumed. There was certainly no writing, and I cannot hold as a matter of fact that Mr. Jones has sufficiently shown that there was ever any assumption of these notes by the firm of Haynsworth & Stuckey.

It has also been insisted that Mr. Jones could not obtain payment of the three notes referred to from the proceeds of the collateral in the Douglas note, on the ground that the transaction, if given such effect, would be a preferential transfer. In view of the conclusion I have reached, it is .not necessary to decide this question. I may say, however, that under section 60 of the Bankruptcy Act (U. S. C. title 11, § 96; 11 USCA § 96) the transfer, to constitute a preference, must be made by the bankrupt. It is true it may be made directly, or indirectly through a third person. In the present case, the transfer to Mrs. Douglas was made by the bankrupts before the four months period and while solvent. In the transaction whereby Mr. Jones took an assignment of the Douglas note, while this occurred within four months prior to bank-

ruptcy, and Mr. Jones knew of the insolvent condition of the bankrupts, nevertheless the bankrupts themselves took no part in this transaction. It would seem, therefore, that the transaction could not be assailed as a preference. In a similar case it was held squarely that such a transaction did not constitute a preference. Richardson v. Winnisimmet Nat. Bank, 189 Mass. 25, 75 N. E. 97, 98.

The next question is whether attorney's fees should be allowed upon the Douglas note. One of the objections made to the allowance of this fee was on the ground that the note had not been placed in the hands of an attorney before bankruptcy intervened. The referee does not distinctly hold that an attorney had not been employed before that time by the holder, but the inference is, from his report, that this was not done. He ruled that, even if an attorney had not been employed until after bankruptcy, nevertheless the fee should not be disallowed. He also held that the note had matured, or at least had been declared due and payable. I think the referee was in error in both respects. Where a note contains a provision for attorney's fees, services rendered after the petition in bankruptcy is filed are not as a general rule allowable. By section 63 of the Bankruptcy Act (U. S. C. title 11, § 103; 11 USCA § 103) debts provable against an estate must be for a fixed liability absolutely owing at the time of the filing of the petition. Under this section, the cases hold that if a claim has been placed with an attorney for collection prior to bankruptcy, and collection proceedings are actually instituted, so that the attorney's fees were a fixed liability at the time of the filing of the petition in bankruptcy, such a fee would constitute a proper debt against the estate of the debtor. But services rendered after the filing of the petition will not constitute such a claim; and where a note with attorney's fees clause is secured by a mortgage of real estate or collateral pledged, and a petition in bankruptcy is filed before any action is taken to institute suit, and there is no contest over the validity of the note, nor the right of the owner to have the property sold and the proceeds applied to the satisfaction of the note, and the sale is made by the trustee, the cases all hold that an attorney's fee is not a proper claim and cannot be charged against the proceeds of the property. British & American Mortgage Co. v. Stuart (C. C. A. 5th) 210 F. 425, and cases therein cited; Gugel v. Bank (C. C. A. 5th) 239 F. 676; In re Roche (C. C. A. 5th)

101 F. 956; In re V. & M. Lumber Co. (D. C.) 182 F. 231; First Savings Bank, etc., v. Stuppi (C. C. A. 8th) 2 F.(2d) 822; 2 Collier on Bankruptcy (13th Ed.) p. 1394. See, also, cases cited in USCA title 11, § 103, at page 48 et seq.

As stated above, while the referee did not distinctly hold one way or the other whether the note in question was placed in the hands of an attorney before bankruptcy or not, nevertheless the inference from his order is that it was not so placed. Be that as it may, however, I have read the evidence very carefully with this point in mind, and I fail to find any evidence at all to show that this note was placed in the hands of an attorney, or anything done to institute suit, or any action taken, prior to bankruptcy. The note by its terms had not matured. It is certainly not clear at all that Mrs. Douglas took any steps to declare it due and payable. All that I can find from the evidence that she did was either to accept payment from Mr. Jones or to call upon him for payment. Nor is there any evidence that Mr. Jones took any steps to declare it matured. Certainly neither of them ever made any demand for the payment from the makers of the note. The trustee has never contested in any way the validity of the Douglas note, or that the collateral was properly applicable to that note. The trustee has negotiated a sale which will provide absolutely for the full payment of that note and interest, without any action being necessary on the part of the holder. The mere proof and filing in bankruptcy of a note containing an attorney's fee clause, whether secured or not, does not, of course, give the right to an attorney's fee for such services in filing the claim, where no contest is made as to the validity of the note or the security. In these circumstances, I think it clear from the authorities that no attorney's fee can be allowed upon the Douglas note.

The petition for review on the part of the Commercial & Savings Bank alleges error also in the order of the referee of April 11, 1928, in holding that the assignment to the Commercial & Savings Bank of the equity in the 95 shares securing the Douglas note was null and void as a preference. The facts upon this question are as follows: On April 2, 1927, Haynsworth & Stuckey and T. B. Haynsworth executed to the Commercial & Savings Bank an assignment of any equity they might have in the 95 shares of Carolina Company stock held by Mrs. Douglas as security to the note of Haynsworth & Stuckey

to her. At that time Mrs. Douglas still held this note and collateral. Written notice of the assignment was given to Mrs. Douglas and Mr. Jones, and thereafter, but on the same day, the Douglas note was assigned without recourse to Mr. Jones. When the bank took the transfer of this equity, either as collateral to secure past indebtedness or as a payment thereon, Haynsworth & Stuckey and T. B. Haynsworth were insolvent, and the president of the bank had full knowledge of their condition. The transfer was made within four months of the filing of the petition in bankruptcy, and the effect of the transfer, if it should be upheld, would be to enable the bank to obtain a greater percentage of its debt than other creditors of the same class, of all of which the bank was well aware at the time of the transfer. There can be no doubt, therefore, but that the transfer of this equity in the 95 shares of stock in question to the Commercial & Savings Bank was a preference, and should be avoided under section 60 of the Bankruptcy Act (U. S. C. title 11, § 96; 11 USCA § 96).

It is said, however, that this transfer should not be avoided absolutely, but the trustee should be permitted to hold it for the benefit of the estate. It is not clear just how allowing the trustee to preserve the lien of the transfer would benefit the estate, especially as this court has now held that Mr. Jones cannot hold the collateral for anything except the Douglas note and interest. Nor are there any facts in the record from which the court can determine whether this would be proper or not. While this portion of the referee's order must be sustained, it will, however, be without prejudice to the right of the trustee to move before the referee and upon proper showing to hold the transfer for the benefit of the estate.

There is a good deal in the testimony relative to certain other transfers alleged to have been preferentially made by the bankrupts to the Commercial & Savings Bank, and some allusion was made to them in the argument; but it appears that those matters have not yet been passed upon by the referee. There is no petition to review any orders in reference to them, and therefore no ruling is made as to any of the other transfers to that bank than the one specifically set aside in the said order of the referee, dated April 11, 1928.

My conclusion as to the order of the referee dated April 11, 1928, is that it should be affirmed in part, and reversed in part; that is to say: First, in so far as the said order adjudges that T. W. Jones is entitled to hold

the security pledged as collateral to the Douglas note for the amount of the Douglas note, with interest, it should be affirmed. Second, in so far as it adjudges that T. W. Jones is entitled to hold the said securities for attorney's fees pursuant to the Douglas note, it should be reversed. Third, in so far as it holds that "T. W. Jones is entitled to hold the securities for the payment of the other debts and liabilities of Haynsworth & Stuckey to him, including notes for the aggregate amount of $5,500, with interest and attorney's fees," it should be reversed. Fourth, in so far as the said order adjudges that the assignment of the equity in the said 95 shares of stock made to the Commercial & Savings Bank is null and void as a preference, it should be sustained, with the proviso, however, that the trustee may move before the referee for an order permitting him to hold said transfer for the benefit of the estate as hereinabove provided.

This brings us now to a consideration of the petition of T. W. Jones to review the order of the referee (dated July 2, 1927) directing the sale of the 95 shares of stock held as collateral to the Douglas note along with the other shares formerly owned by Haynsworth & Lawton, in a block. It appears that T. W. Jones objected to this form of sale and demanded that the stock be sold separately, and that the Carolina Company joined with him in this objection. The objection of Mr. Jones appears to be twofold: First, because he had a right to protect his interest in collecting from the proceeds of the sale of the 95 shares, not only the Douglas note itself, but the three Haynsworth & Lawton notes which he claimed should be paid from those proceeds; and, secondly, that in any event as a general creditor he would have the right to object to such a sale, and he has filed a petition to review. The objection of the Carolina Company, an unsecured creditor, appears to be simply on the ground that, as such unsecured creditor, the stock of this bankrupt estate should be sold separately and apart and not mixed with the sale of any other bankrupt estate. The Carolina Company, however, filed no petition to review. No other creditor of any of the bankrupt estates is making any objection to the proposed sale.

If this court had found that Mr. Jones was entitled to collect from the proceeds of the 95 shares of stock, not only the Douglas note, but also his other three notes, then I think that his objection to the proposed sale would have been well taken. My

view is that, where a creditor has security for his debt or debts, he has a right to have that collateral itself sold separate and apart from any other collateral, so that he may have an opportunity to bid it in and protect himself in this way, and should not be compelled to make a bid on that property in connection with other property, even though of the same class.

But that is not the situation here. Here the court has found that Mr. Jones is not entitled to collect the three notes referred to, aggregating $5,500, from the collateral which secured the Douglas note. It is conceded by all of the parties that the sale proposed by the trustee will pay the Douglas note in full, principal and interest. So far as being a secured creditor is concerned, therefore, Mr. Jones is not an aggrieved party, and has no right to complain of or object to the proposed sale. The Douglas note is being paid in full, and any disposition of the property in order to create an equity for the benefit of the unsecured creditors is no concern of the holder of the secured note which is so paid.

Now, can he complain because, as he alleges, he is a general creditor, or can the Carolina Company, as a general creditor, complain? Ordinarily, I should say that a particular piece of property belonging to a particular bankrupt should, as a general rule, be sold by itself and not sold in conjunction with the property of another bankrupt estate or another individual. But I do not entertain any doubt but the bankrupt court may, in the interest of creditors, order the trustee to make a sale of such a nature. For example, suppose a bankrupt estate owns a parcel of land or a block of stock in a concern, which can be sold, say for a certain sum; suppose, however, the trustee ascertains that if he will join with the owner of another piece of real estate which adjoins it, or, in a case of stock, with another owner of similar stock, he can sell it at an increased price and bring in more money to the bankrupt estate by such sale than by a separate sale, I see no legal reason why it cannot be done, and, if the facts warrant it, why it should not be done. It is not against the interests of the unsecured creditors, but is to their interest, and tends to bring in a larger sum to be distributed among them.

Now, in this particular case, it is clear, and is practically conceded, that this 95 shares of stock belonging to the present bankrupt estate can be sold, with the other stock, at a sum which will not only pay off the Douglas note, but secure a surplus which will go for the benefit of the unsecured creditors.

It is also clear, and practically conceded, that unless sold in that way—that is, if sold separately—it will not bring near as much, and, indeed, will probably not bring more than enough to pay the Douglas note. These are cogent reasons why the sale should be approved, unless some injury is shown by some person having a right to complain. I have shown that the secured creditor has no right to complain, because he is paid in full. It may be said that the unsecured creditors would prefer to bid on the stock separately, and not care to bid when it is sold in connection with another block, when they must take the whole. But there is no showing here that anybody desires to purchase that 95 shares separately, except Mr. Jones. The sale proposed is beneficial to the unsecured creditors, and I do not see how either they or Mr. Jones have any right to complain.

In addition to this, while not controlling, it is to be observed that in this particular case the parties themselves, before their bankruptcy, had an agreement in writing (and, prior to the written agreement, an oral agreement to the same effect) that this particular stock should not be sold separately, but should be disposed of in a block, as it was recognized that its value depended largely on there being sufficient in the block to control the corporation.

The whole matter, as a practical situation, may be summed up in a few words: If the 95 shares are sold separately, there will practically be nothing for the unsecured creditors from that stock. If they are sold in connection with other stock, as proposed by the order of the referee, there will be a surplus to be distributed among the unsecured creditors of the bankrupts. I think, therefore, that the referee's order for the sale of the stock in question should be upheld.

For these reasons, the petition of the trustee and of the Commercial & Savings Bank to review the order of the referee adjudging Mr. Jones to have the right to collect the Haynsworth & Lawton notes from the proceeds of the collateral in the Douglas note must be sustained in part, and the said order modified as herein stated, and that proceeding remanded to the referee for further proceedings, in accordance with this opinion. But the petition of T. W. Jones to review the order of the referee providing for the sale of the 95 shares of stock, in connection with the other stock as a block, must be denied, and said petition dismissed, and the said order of the referee ordering such sale must be sustained.

Appropriate orders in accordance with this opinion will be duly entered.

### On Petition for Rehearing.

T. W. Jones has presented a petition for a rehearing upon the questions decided by an opinion in the above cause by this court, filed on the 22d of May, 1928, and orders of the same date made in accordance with said opinion. I have read the petition and studied it very carefully, and have reviewed once more the testimony and record in the cause. All of the points of law raised by the petition were duly considered in the former opinion. Some of them were not discussed particularly in detail, but were included in the general discussion. As to the questions of fact presented by the petition for rehearing, in many cases the allegations of the petition are not supported by the record. The former opinion was a very lengthy one, and for that reason an effort was made to avoid details as much as possible. In order, however, that the parties may feel sure that no point has been overlooked, I will endeavor to advert as briefly as practicable to the main points suggested by the petition for rehearing.

In the petition for rehearing the point is made that the court overlooked the fact that the Douglas note was payable to order, and therefore negotiable. This point was not overlooked, but was not specifically discussed, for the reason that it seems to the court too plain for argument that the negotiability of the note has no bearing upon the question involved. The fact that the note is negotiable could not add to or diminish the indebtedness to which the collateral was applicable.

The petition also makes the point that the word "payee" is mentioned in a number of places in the Douglas note and should receive the same meaning throughout. I am not prepared to hold that a word in a note must necessarily receive the same meaning throughout, especially in this particular case, where the word "payee" in some places in the note is qualified by additional words, such as "its successors or assigns or the *holder* hereof," while in other places it is not so qualified, and especially is not so qualified in that place where it provides for the application of the collateral to "any other demand" "of the undersigned to the payee." But the question is what demands constitute a lien on the collateral, and the language of the note is that it must be demands "of the undersigned to the payee," and not to the payee *or any holder*. The word "payee" in the note, however, was given in the former opinion exactly the same meaning throughout. As the petition for rehearing asserts, the word "payee" means, in every case, Mrs. Douglas; but certain provisions of the note upon which the petitioner relies give the holder the same rights that Mrs. Douglas would have had. But there is not a word in the note to indicate that the "holder" would have the right to tack to the note any other demands than Mrs. Douglas could have tacked to it.

That the argument of the petitioner is unsound, I think, may be demonstrated from another provision of the note. The note provides, not only for a lien upon the collateral described therein, but also upon "any and all other funds, property, or security at any time delivered to the payee or left in its possession by or for the undersigned for safe-keeping or otherwise." Under this provision it is clear that any property in the hands of Mrs. Douglas belonging to the makers of the note would have been applicable to the payment of the note. If the argument of the petitioner is sound, then any property in the hands of T. W. Jones belonging to the maker of the note would likewise be applicable to the payment of the note. Let us suppose that the note had remained in the hands of Mrs. Douglas, and that the makers of the note had turned over for safe-keeping to Mrs. Douglas some other property, say a horse, entirely disconnected with the note in question. It is clear that under the terms of this note Mrs. Douglas would have the right to sell that horse and apply the proceeds to the note. But let us suppose that the horse had been turned over to Mr. Jones, say before he acquired the note (or even afterwards), by the makers of the note. Would any court hold that Mr. Jones would have the right to sell that horse and apply the proceeds to that note? I think not. And the reason is that the note provides for property left for safe-keeping with the "payee," but does not provide for property left with any "holder." And yet, if the argument of the petitioner is sound as to the construction of the word "payee" and the rights transferred to the holder of this note, Mr. Jones would have the right to sell the horse, as well as the collateral specifically described and deposited.

But I think it unnecessary to multiply words or add to the discussion. The whole basis of the decision of this court is that we must look to the intention of the parties, and what they must be reasonably supposed to have intended when they spoke of other demands of the payee, and I think that in all the circumstances they must have contemplated only demands made by Mrs. Douglas, and

not demands of some subsequent holder, in the absence of clear language showing that such subsequent holder was in contemplation.

The petition for rehearing also alleges error in that portion of the former opinion which holds that the note does not cover demands against Haynsworth & Stuckey jointly with other persons. Assuming that Haynsworth & Stuckey assumed the payment of the Haynsworth & Lawton notes, in the absence of a novation it is clear that the original makers of those notes remained liable along with Haynsworth & Stuckey. Whether that liability was joint or several really makes no difference in this case. The point is that the demands referred to in the Douglas note are demands against Haynsworth & Stuckey, and not demands against Haynsworth & Stuckey along with other people who are equally liable.

■ The petition also alleges error in the court's holding that it was not sufficiently shown that there was ever any assumption by Haynsworth & Stuckey of the Haynsworth & Lawton notes. This matter is fully discussed in the opinion, and the court, upon reconsideration thereof, is fully confirmed in its position that the evidence is not sufficient. The petition suggests, in reference to the statement in the schedules that the notes were assumed by Haynsworth & Stuckey, that it was not without the right of cross-examination. The fact that the parties who made this statement were afterwards sworn and cross-examined does not render the original statement admissible, except as a matter of contradiction. The right of cross-examination is not saved by admitting an ex parte statement, where no right to cross-examine at the time can be had, simply by the party being sworn and subject to cross-examination later. The only way in which such an ex parte statement is admissible at all is, when the witness is sworn and testifies in reference to the matter, he may be asked whether or not he made such a previous statement, for the purpose of contradicting him, and for that purpose only, which is not the fact in this case.

The petition for rehearing also alleges error in the finding as to attorney's fees. The petition states that there is no question whatever as to the fact that the note was placed in the hands of an attorney for collection, and that services were rendered prior to the filing of the petition in bankruptcy. But the difficulty is that the record does not support this contention. The petition asserts that Mr. Jones made this definite allegation in his verified petition and that it is not contradicted. But the objecting creditors (among other grounds) objected specifically on the ground that the note had not been placed in the hands of an attorney for collection before bankruptcy, and there is not a particle of evidence in the whole record from beginning to end to show that it was so placed. Mr. Jones could not, where the objecting creditors had made an issue of this point, merely by verified petition, make that proof of the very fact at issue. He should have offered evidence before the referee, showing that the note was placed in the hands of an attorney for collection before bankruptcy, and just what services were rendered prior to that time. This he did not do, and there is nothing before the court to show that any such services were rendered.

■ So, also, as to the point made in the petition that Mr. Jones had declared the note due and payable. There is nothing, so far as I can find in the record, anywhere to show that he took any action in that respect whatever before bankruptcy. A party having an option to declare a note due and payable surely cannot simply by his own secret intention, never disclosed by act or word, claim that he declared the note due and payable. So far as the evidence before me goes, either the note was never declared due and payable, or, if it was, it was done simply by a secret undisclosed intention of Mr. Jones in his own mind, never manifested by any outward action or word.

■ The remaining points, with one exception, are so obviously without foundation in the facts of the case that a further discussion of them is unnecessary. But there is one point made by the petition for rehearing that it may be advisable to set forth the facts more in detail than was done in the former opinion. That point is in reference to the sale of the 95 shares of stock pledged to the Douglas note. The petition for rehearing asserts that Mr. Jones is willing to pay a larger sum for that particular block of stock than the price fixed by the proposed sale. In reviewing the record I find that the referee, in his report of July 2, 1927, does state that Mr. Jones and the Carolina Building Material Company filed a petition opposing the sale of the stock as a whole, and in open court offered to pay a greater price than $105 per share for the 95 shares in question. From this the argument is made that it is therefore to the interest of the bankrupt estate to sell the 95 shares to Mr. Jones at some advance, rather than sell it in connection with the other stock as a block for the price fixed in the proposed sale by the order of the referee.

In the first place, nowhere does Mr. Jones state how much more he would be willing to give. Section 70(b) of the Bankruptcy Act (U. S. C. title 11, § 110(b); 11 USCA § 110(b) provides that property of the bankrupt estate shall be appraised, and when practicable sold subject to the approval of the court, and that it shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value. In this case the trustee made report to the referee of the proposed sale, which would bring in more than 80 per cent. of the appraised value. The referee after full hearing approved this sale. In such circumstances, this court would not feel disposed to set aside the judgment of both the trustee and referee upon a showing merely by some creditor that he was willing to pay more. The creditor ought to make an offer of such a substantial advance as to appeal to the discretion of the trustee and the referee not to make the proposed sale, but to accept the offer of such creditor. Here, by selling these shares in connection with other shares belonging to the bankrupt estates of Lawton & Co. and J. M. Lawton, the trustee and the referee have obtained an offer of more than 80 per cent. They have looked into the matter fully, and advised that it is to the best interests of the estate that that offer be accepted; and I do not think that their judgment in the matter should be upset, in the absence of a showing that the offer of an advanced price covered a substantial amount.

But, in addition to this, there are other considerations that govern this particular case. There were 275 shares of this particular stock that are involved in the proposed sale. These 275 shares were formerly held by Haynsworth & Lawton, and J. M. Lawton, and J. M. Lawton & Co., under the agreement not to sell separately that I have already adverted to in the former opinion; 115 of these shares are now held by the trustee for the bankrupt estates of Lawton & Co. and J. M. Lawton. As far as aiding the sale of these 115 shares belonging to the bankrupt estates of Lawton & Co. and J. M. Lawton, I am assuming that the shares now belonging to the bankrupt estate of Haynsworth & Stuckey should not be sold at a lower price than Mr. Jones would be willing to bid for them, for the sake of getting a larger price for the 115 shares belonging to the estates of J. M. Lawton & Co. and J. M. Lawton. But the facts show that the bankrupt estate of *Haynsworth & Stuckey* has 160 of these shares; that is to say, T. B. Haynsworth 130, and Haynsworth & Stuckey 30,

shares. Of the 130 shares belonging to T. B. Haynsworth, 75 stand pledged to the Douglas note, and 55 to the note of the Commercial & Savings Bank; and of the 30 shares of Haynsworth & Stuckey, 20 are pledged to the Douglas note, and 10 to the note of the Commercial & Savings Bank. Now, Mr. Jones' offer to purchase at an advance over the price fixed by the proposed sale (without saying how much the advance would be) was confined to the 95 shares. It is clear, therefore, that if the 95 shares of the bankrupt estate of Haynsworth & Stuckey are sold to him, then the 65 shares *remaining in that estate* cannot be sold to any advantage, if at all. In other words, laying aside any benefit to the sale of the 115 shares of the estates of Lawton & Co. and J. M. Lawton, the trustee of Haynsworth & Stuckey, by making a sale of the 95 shares at $105 is also enabled to sell the *remaining 65 shares* of the bankrupt estate of *Haynsworth & Stuckey* for the same price; when, if he should accept the offer of Mr. Jones to purchase the 95 shares alone, then the *remaining 65 shares* of the latter estate could not be sold for as much, but probably for only a very much smaller sum. It is clear, therefore, that the proposed sale of the whole 160 shares of the Haynsworth & Stuckey estate is advantageous to that estate, unless Mr. Jones could make a showing, which he has not done, that the advanced price offered by him for only 95 shares would more than counterbalance the loss that would be occasioned by the sale of the 65 shares separately from the 95 shares.

It is argued by Mr. Jones, however, that the 65 shares stand pledged to the Commercial & Savings Bank, and that there is no equity for the general creditors in those shares, and that therefore the proposed action would inure only to the benefit of Commercial & Savings Bank, and not to the general creditors. But this argument assumes that there is no equity, and so far as the record before me discloses, there is nothing to show that there may not be an equity. But, even if there should be no equity, nevertheless the reduction of the claims of the Commercial & Savings Bank would reduce the amount of their deficiency on their notes which they would be enabled to prove against the bankrupt estate, and the reduction of this deficiency would inure to the benefit of the other creditors.

In the foregoing consideration of this matter, I have left out of view entirely the effect upon the 115 shares belonging to the bankrupt estates of Lawton & Co. and J. M. Lawton, and also the agreement between the

original holders of this stock not to sell separately, though it seems that these matters ought to have some consideration in determining the advisability of approving the sale in question.

Upon a reconsideration of the whole matter in every aspect, I think that it has been shown to the satisfaction of the trustee and the referee, and to this court, by the evidence and record in the cause, that the sale proposed by the trustee of the stock as a whole is beneficial to the bankrupt estate and the general creditors of Haynsworth & Stuckey, and that Mr. Jones has not made any showing that any offer he may have made will be more beneficial to that estate, and that the proposed sale by the trustee as confirmed by the referee should be approved and confirmed by this court.

Upon this branch of the case there have already been two arguments, and one argument on the other branches. The court has considered the whole case fully. It is to the interests of the public and of the parties to this particular case that there should be an end of litigation. I cannot see, therefore, that any useful purpose would be subserved by granting a rehearing.

It is therefore ordered, adjudged, and decreed that the petition of T. W. Jones for a rehearing on the above-stated matters be and the same is hereby denied and refused, and the opinion of this court and the orders pursuant thereto, dated May 22, 1928, be and the same are hereby ratified and confirmed.